(C.D. 2900)

TRANS-WORLD SHIPPING SERVICE, INC., ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 23, 1967)

*Steptoe & Johnson* (*I. Martin Leavitt* of counsel) for the plaintiffs.
*Barefoot Sanders,* Assistant Attorney General (*Richard J. Kaplan* and *Harvey A. Isaacs, trial attorneys*), for the defendant.

Before RAO, FORD, and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise of the instant protests, five in all, which have been consolidated for trial purposes, consists of parts for a complete coal loading machine or machines, spare and replacement parts for the same, and spare parts for a railroad car dumper which were entered at Cleveland, Ohio, from West Germany. The various parts of the coal loading machine or machines other than belting are covered by five entries under protest 63/9249 (entries numbered 271, 277, 288, 293, 329 of the Chesapeake Realty Development Corp. The spare and replacement parts for the coal loading facility other than belting are covered by nine entries under protest 63/9251 (entries numbered 207, 241, 242, 248, 348, 354, 527, 590, 769 of the Chesapeake & Ohio Railway Co.) and one entry under protest 63/9247 (entry numbered 328 of the Trans-World Shipping Service, Inc.). The spare parts for the railroad car dumper are covered by one entry under protest 63/9247 (entry numbered 523 of the Trans-World Shipping Service, Inc.). Belting for the coal loading facility is covered by three entries under protest 63/9248 (entries numbered 271, 277, 288 of the Chesapeake Realty Development Corp.) ; and the spare belting for the same facility is covered by two entries under protest 63/9250 (entries numbered 248, 590 of the Chesapeake & Ohio Railway Co.).

With the exception of merchandise covered under entries numbered 271, 277 and 288 which is the subject of protest by plaintiff Chesapeake Realty Development Corp. under protests 63/9248 and 63/9249, the merchandise was appraised as entered. As to the merchandise covered by entries 271, 277 and 288, this merchandise was advanced in value upon appraisement as the result of the appraisement of the belting separately from the appraisement of the coal loading machine or machines. However, no appeal for reappraisement was taken either by the collector or by the plaintiff Chesapeake Realty Development Corp. with respect to entries numbered 271, 277 and 288. Thereafter,

the collector classified all merchandise other than the belting under the provision for electrical articles and parts under 19 U.S.C.A., section 1001, paragraph 353 (paragraph 353, Tariff Act of 1930) as modified by T.D. 52739; and classified the belting under the *eo nomine* provision therefor contained in 19 U.S.C.A., section 1001, paragraph 913(a) (paragraph 913(a), Tariff Act of 1930) as modified by T.D. 51802. The plaintiffs contend that all of the involved merchandise should be classified under the provision for machines and parts under 19 U.S.C.A., section 1001, paragraph 372 (paragraph 372, Tariff Act of 1930) as modified by T.D. 54108.

The issue before the court relates to the proper dutiable classification of all parts of the coal loading machine, consisting of subassemblies of feeders, conveyors, and boatloader, which when fully assembled and connected to other equipment, formed a complex facility in the rail yards and dock of the plaintiffs, The Chesapeake & Ohio Railway Co. and the Chesapeake Realty Development Corp. at Presque Isle, Ohio, by means of which railroad cars loaded with coal are mechanically emptied of their contents and the coal transported to the dock where it is loaded into the holds of vessels tied up at the dock.

The competing tariff provisions read as follows:

[Par. 353, as modified]   Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    \*       \*       \*       \*       \*       \*       \*

    Other (except . . .) _____ 13¾% ad val.

[Par. 372, as modified]   Machines, finished or unfinished, not specially provided for:

    \*       \*       \*       \*       \*       \*       \*

    Other (except . . .) _____ 12% ad val. or 11½% ad val. [depending upon the date of entry]

Parts . . . .                            The rate for the article of which they are parts.

[Par. 913, as modified]   (a) Belts and belting, for machinery:

    \*       \*       \*       \*       \*       \*       \*

    Wholly or in chief value of cotton or other vegetable fiber and india rubber, and valued at 40 cents or more per pound_____ 20% ad val.

The plaintiffs maintain that the electrical equipment forming part of the coal loading facility is not essential to the operation of the machine, and further, that the belting was designed and fabricated

solely for use on the involved machine and is an integral part of the machine.

With a view toward establishing non-essentiality of the coal machine's electrical equipment and dedication of the belting to the machine, the plaintiffs introduced at the trial the testimony of one Emil Szaks, materials handling engineer in the employ of the plaintiff railroad company, who was intimately associated with the design of the coal loading machine and the approval of its specifications, and who supervised the construction of the machine following the importation of the various parts thereof. Mr. Szaks, who was the only witness, testified at length on direct and cross-examination with respect to the design and purpose of the coal loading machine and as to the functions of its various parts and the electrical apparatus and equipment which operate and control the machine, employing various photographs of parts of the equipment to illustrate and explain his testimony (plaintiffs' exhibits 1 through 7; defendant's exhibits A and B). Also in evidence are excerpts from the contract and specifications on the basis of which the machine was manufactured and constructed.

Following the trial and with the presentation of briefs it developed that the parties were in agreement concerning and made concessions in their briefs with respect to classification of all items of merchandise other than the belting (defendant's brief, pages 2 and 4; plaintiffs' reply brief, pages 1 and 2). It is thus conceded that parts of the machine stipulated to be in chief value of metal, except certain enumerated electrical items which are, namely, an oil cooling system consisting of radiators, fans and pressure switches, a plunger type limit switch, eight rail clamp electrical magnets, and an electrical repair hoist, are properly classifiable as claimed under paragraph 372 as machine parts; and that the enumerated electrical items are properly classifiable under the provision for electrical articles and parts under paragraph 353.

It would appear that the aforestated concessions of the parties remove from contention all issues as to the classification of the involved merchandise other than the belting, rendering it unnecessary for us to discuss the evidence relating to the classification of such merchandise. Suffice it to say that we are satisfied that the evidence furnishes a basis of support for the concessions made. However, there remains to be considered the proper classification of the belting, concerning which the parties are not in agreement. It appears from the evidence that the coal loading machine was manufactured in West Germany by Fried. Krupp Maschinen–Und Stahlbau Rheinhausen under contract with the plaintiff Chesapeake Realty Development Corp. to furnish and install the machine on property of the purchaser at Presque Isle, Ohio. The belting which comprises part of the

completed machine was manufactured by Continental Gummiwerk of Hanover, Germany, under sub-contract with Krupp, and was installed during the erection of the machine in endless form in the conveyors and feeders by the sub-contractor's technicians who brought in their own vulcanizing equipment to do the job.

It was brought out in the testimony that the belting is 96 inches wide, and was designed for the machine in question to enable the machine to deliver or move tonnage at the rate of 6,000 tons per hour, and that no belting of such width or capable of moving such tonnage was produced or made in the United States. And it was stipulated that the composition of the belting is wholly or in chief value of cotton or other vegetable fiber, or of cotton or other vegetable fiber and india rubber.

There would be no question but that if the coal loading machine here involved was classifiable as an entirety, the belting covered by entries 271, 277 and 288 of protest 63/9249, comprising necessary parts of the machine, would not be subject to separate classification. *United States* v. *Leigh*, 159 Fed. 314. However, the record before us clearly establishes that the involved merchandise was imported at different times and in different vessels, and that staggered shipment of the component parts was within the contemplation of the parties under the contract. Such manner of importation precludes classification of the coal loading machine as an entirety. *University of Chicago* v. *United States*, 2 Cust. Ct. 358, C.D. 159, and cases cited at pages 368 through 370. This means that the involved belting, even though dedicated to the machine in question, is at most either a machine part or belting for classification purposes.

However, not all machine parts are classifiable under the provision for parts of machines in paragraph 372 of the present Tariff Act. Only those machine parts which are wholly or in chief value of metal or porcelain can be properly classified under the provision for parts in paragraph 372. To this extent the paragraph differs from the provision under the corresponding paragraph of the 1922 Act where composition of machine parts was not restricted. And since the belting in question is not composed of metal or porcelain, it is necessarily excluded from classification under paragraph 372. In view of the stipulation of the parties respecting the composition of the belting, classification of the belting under paragraph 913 (a) is proper. And as no question arises as to the ascertainment of duties on the belting under paragraph 913 (a) the collector's assessment of duties thereunder as to the belting must be upheld as being correct.

More difficult of solution, however, is the situation with respect to the dutiable status of and the assessment of duties on the component parts of the subject machine (protest 63/9249) other than the belting,

notwithstanding agreement of the parties regarding classification of these parts. The official papers disclose an apparent appraisement of the coal loading machine, minus the belting, as an entirety, although the items of the machine included in each entry were seemingly appraised at their total proportionate values. Since no unit values were returned for the component parts of the machine, the effect is to deprive the collector of any basis for ascertaining and assessing ad valorem rates of duty upon the component parts. And the collector lacks power to determine the unit value of merchandise for the purpose of assessing duties. *United States* v. *Stegemann*, 12 Ct. Cust. Appls. 198, T.D. 40179. Therefore, in the absence of the existence of unit values for the component parts of the coal loading machine covered by the entries under protest 63/9249 (in view of the importation of these parts at different times) appraisements under these entries are invalid and void, and liquidation of the entries is premature. *Henry A. Wess, Inc.* v. *United States*, 43 Cust. Ct. 78, C.D. 2107.

Unit values were, however, returned for the spare and replacement parts covered by the entries under protests 63/9247 and 63/9251, and as such, constitute valid appraisements on the basis of which ascertainment and assessment of duties may properly be had in accordance with the stipulation or concession of the parties respecting classification of the merchandise covered thereby.

For the reasons stated, we hold that protests 63/9247 and 63/9251 are sustained as to all merchandise except component parts or articles consisting of an oil cooling system composed of radiators, fans and pressure switches, a plunger type limit switch, eight rail clamp electric magnets, and an electrical repair hoist, and as to such items said protests are overruled; that protests 63/9248 and 63/9250 are overruled; and that as to protest 63/9249 the matter is remanded pursuant to 28 U.S.C.A., section 2636(d) to a single judge of this court to determine the proper dutiable value of the merchandise covered by the entries in the manner provided by law.

Judgment will be entered accordingly.