(C.D. 3480)

F. W. MYERS & COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 18, 1968)

Barnes, Richardson & Colburn (Joseph Schwartz and James S. O'Kelly of counsel) for the plaintiff.

Edwin L. Weisl, Jr., Assistant Attorney General (Arthur H. Steinberg and Alfred A. Taylor, Jr., trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of a tractor and drive belts exported from Canada and entered at Rouses Point, New York. At the trial the protest was abandoned as to the tractor, and the issue was limited to the proper classification of the belts. The collector classified the belts under the provision for belting and belts for machinery in item 358.06 of the Tariff Schedules of the United States, as amended, and assessed the same for duty at the rate of 16 per centum ad valorem. And it is claimed by the importer that the belts should be classified under the provision for parts of motor vehicles in item 692.27 of the tariff schedules, as amended, at the duty rate of 8.5 per centum ad valorem.

The competing tariff provisions read as follows: ·

[item 358.06]

Belting and belts, for machinery, of textile fibers or of such fibers and rubber or plastics:

 \* \* \* \* \* \* \*

 Other:

 Of vegetable fibers, or of such fibers and rubber or plastics:

 \* \* \* \* \* \* \*

 In part of rubber or plastics _____ 16% ad val.

[item 692.27]

Chassis, bodies (including cabs), and parts of the foregoing motor vehicles:

 \* \* \* \* \* \* \*

 Other:

 \* \* \* \* \* \* \*

 Other _____8.5% ad val.

Leon Elliott, president of Elliott & Hutchins, Inc., of Malone, N.Y., the importer herein, testified that his company has been a distributor of Bombardier ski-doos since 1960, that he is familiar with the ski-doo which he described as being a motor driven light vehicle that goes over snow, that he has seen the ski-doo being operated and has operated one himself, that the ski-doo's motor requires a drive belt, and that the vehicle would not operate without a belt. Mr. Elliott identified a sample of a drive belt used on a ski-doo bearing the legend H–SK–85 and received in evidence as plaintiff's illustrative exhibit 2, stating that it was like the one imported in this case, identified as SK–85A, except that exhibit 2 is a quarter of an inch narrower.

On the matter of the uses to which the imported belts are put, the witness testified on direct examination (R. 6–7):

Q. Have you ever known of a drive belt for the Ski-Doo being used for anything else?—A. No; I haven't.

Q. Do you also handle machinery of any kind?—A. We do.

Q. What is that, agricultural machinery?—A. Farm machinery.

Q. Do you deal in drive belts for such machinery?—A. Yes.

Q. Have you brought some samples of drive belts for farm machinery?—A. Yes.

Q. Are these the belts that you brought?—A. They are.

Q. There are six?—A. I believe so.

At this point the importer's counsel introduced into evidence six drive belts which were received as plaintiff's collective illustrative exhibit 4. Concerning these belts, the witness testified (R. 8):

Q. Will you tell us what machinery the drive belts covered by Plaintiff's Collective Illustrative Exhibit 4 are used with?—A. There is a belt there for a hay baler, a combine, a mowing machine, a tractor fan belt, and a tractor generator belt, also a hay conditioner.

Q. Based upon your experience could the 85 or 85–A belt for the Ski-Doo be used for any of that other equipment?—A. No; it could not.

Q. Could the belts for the other equipment covered by Collective Exhibit 4 be used for the Ski-Doo?—A. No; it could not.

And on cross-examination Mr. Elliott testified, among other things, that his company obtained exhibit 2 from Bombardier Snowmobile, Ltd., that his company uses exhibit 2 in connection with the ski-doo, that he did not know of anything physically inherent in exhibit 2 which limits the article to use with the ski-doo, that the grooves on the inner portion of the belt help in traction on the clutch and drive pulley, and that he does not know if other machinery transmissions utilize belts containing grooves.

Plaintiff contends that the imported belts are dedicated and exclusively used in connection with motor vehicles, and in particular, with the ski-doo. Defendant contends that plaintiff has failed to prove that the imported belts are solely or chiefly used as a part of the ski-doo, and that, in any event, there is a specific provision for belts (meaning item 358.06 of TSUS) which prevails over a classification for parts of motor vehicles.

We disagree with defendant in its second contention. There is no provision in the tariff schedules for belts *per se*. The provision in question is for belting and belts for machinery of certain compositions.

The presumption which obtains from the classification made by the collector is that the belts at issue are used for purposes other than as parts of motor vehicles. From the evidence adduced in this record the plaintiff has not overcome the presumption. The testimony of Mr. Elliott establishes beyond question the fact that the imported belts are used on the motors and transmissions of the ski-doo, and it specifically eliminates the possible use of the belt of the ski-doo on a hay baler, a combine, a mowing machine, a hay conditioner, and as a tractor fan belt and a tractor generator belt. It also eliminates the possible use of the belts for such farm equipment on the ski-doo. The witness' testimony does not go so far as to eliminate other non-vehicular uses for these belts, and he stated that he did not know of anything physically inherent in exhibit 2 which limits it to use on the ski-doo. The most distinguishing feature of exhibit 2 in comparison with collective exhibit 4 is the fact that it contains grooves, and, on cross-examination, Mr. Elliott testified that he was not sure, but there probably are other belts that use grooves. Mr. Elliott's testimony that he does not know of any other uses for these belts other than on the ski-doos begs the question as to the adequacy of his knowledge of the breadth of usage for this article from his position as a distributor of Bombardier ski-doos.

The case of *Trans-World Shipping Service, Inc., et al.* v. *United States*, 58 Cust. Ct. 120, C.D. 2900, decided February 23, 1967, which has been cited to us by the importer for the proposition that the provision for parts of motor vehicles is more specific than the provision for belting for machinery, did not involve motor vehicles or turn on any question pertinent to our inquiry here. And furthermore, the record in that case shows that the belting there involved had been made specially for the coal loading conveyor system with which the belting was imported, and the belting was installed in this country by the manufacturer.

Taking the record as a whole, we are of the opinion that the plaintiff has not presented any substantial evidence negativing use of the belts here involved for purposes other than as parts of motor vehicles

637

or showing their chief use to be drive belts on ski-doos. The protest is, therefore, overruled.

Judgment will be entered accordingly.