(C.D. 3744)

MAIDEN LANE TRADING CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 17, 1969)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman*, trial attorney), for the defendant.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The merchandise of this protest consists of cotton carded grey greige print cloth imported from Yugoslavia August 31, 1963. It was classified as unfinished grey carded cotton print cloth, not bleached, not combed, other, average yarn number 31 and average yarn number 32 and assessed at 9.3 cents per pound under item 320.31 and 9.6 cents per pound under item 320.32, respectively, Tariff Schedules of the United States. Plaintiff does not dispute the classification nor the rates of duty assessed upon liquidation. Rather plaintiff contends that the specific rates of duty should have been applied against a lower weight than that used in liquidation. The collector used the entered weights in liquidating the entry. Plaintiff contends the collector should have used the weight computed on the weight per square yard found in the Customs Laboratory tests for the entered yardage.

The statutes involved are:

Tariff Schedules of the United States

Schedule 3. – Textile Fibers and Textile Products
Part 3. – Woven Fabrics

\*    \*    \*    \*    \*    \*    \*

Subpart A. – Woven Fabrics, of Cotton

1. (a) In the ascertainment of the condition of the fabrics or yarns upon which the duties imposed upon cotton fabrics are made to depend, the entire fabric and all parts thereof shall be included.

(b) The term "*number*", as applied to woven fabrics of cotton, means the average yarn number of the yarns contained therein. In computing the average yarn number, the length of the yarn is considered to be equal to the distance covered by it in the fabric in the condition as imported, with all clipped yarn being measured as if continuous, and with the count being taken

of the total single yarns in the fabric including the single yarns in any plied yarns. The weight shall be taken after any excessive sizing is removed by boiling or other suitable process. Any one of the following formulas can be used to determine the average yarn number for tariff purposes:

$$N \; = \; \frac{BYT,}{840} \; or \; \frac{24T,}{35Z'} \; or \; \frac{2BT,}{105Z} \; or \; \frac{3ST}{70}$$

when:

N   is the average yarn number,
B   is the breadth (width) of the fabric in inches,
Y   is the yards (linear) of fabric per pound,
T   is the total single yarns per square inch,
S   is the square yards of fabric per pound,
Z   is the ounces per linear yards of fabric, and
Z'   is the ounces per square yard of fabric.

\*     \*     \*     \*     \*     \*     \*

4. None of the ad valorem rates of duty, or the ad valorem parts of the compound rates of duty, set forth in the Rates of Duty columns for items 320.01 through 320.98 shall be less than the equivalent of 0.3 cents per number per pound in rate column 1, or less than 0.55 cents per number per pound in rate column 2.

Woven fabrics, wholly of cotton:
   Not fancy or figured:
      Not bleached and not colored:

        \*     \*     \*     \*     \*     \*     \*

| | | |
|---|---|---|
| 320.31 | Of number 31_____ | 15.25% ad val. |
| 320.32 | Of number 32_____ | 15.50% ad val. |

The record consists of the testimony of Melvin Lerner, Chief, U.S. Customs Laboratory at Baltimore. Mr. Lerner, a chemist in the Customs Service for 25 years, appeared as a witness for the plaintiff. The tests to determine yarn number were performed under his supervision. The test report is U.S. Customs Laboratory Report, Lab. No. 6485/86. Mr. Lerner testified that some precisely cut squares, 2 inches on each side, of the cloth to be tested are placed in a conditioned room which is kept at a precisely maintained 65 percent relative humidity and 70-degree temperature. The cloth is allowed to come to equilibrium to that room, then it is weighed and the number of yarns per inch are counted under a microscope. This is the method set forth by statute.

Mr. Lerner further testified the purpose of the laboratory analysis was to obtain the yarn number and for "so-called statistical purposes to give the ounces per square yard since the Government makes certain broad classifications of cloth entering the country on the basis of its so-called basis weight." (R. 7–8.) There is no notation on the laboratory

report indicating this as the purpose, and on cross-examination he admitted that the determination of the weight of a representative sample of the merchandise was essential to the determination of the yarn number.

The witness testified that he assumed the sample tested to be representative of the shipment, and it would follow that its weight per yard would be representative of the shipment in a conditioned atmosphere.

On motion of the plaintiff, the invoice, entry, and all other documents transmitted by the Customs Service to the court were received in evidence and deemed marked. Among them were the Customs Laboratory Report, Lab. No. 6485/86, Carrier's Certificates, Certificates of Origin from the Economic Chamber of the Peoples Republic of Croatia, and the Consumption Entry.

It is well-settled law that the collector's official actions with respect to imported merchandise are clothed with a presumption of correctness which rests upon the presumption that he has found every fact to exist that was necessary to sustain his actions. See *United States* v. *I. Magnin & Co., Inc.*, 21 CCPA 77, T.D. 46394; *E. I. du Pont de Nemours & Co.* v. *United States*, 27 CCPA 146, C.A.D. 75; *United States* v. *Marshall Field & Co.*, 17 CCPA 1, T.D. 43309; *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325, and the recent case in this court of *F. W. Myers & Company, Inc.* v. *United States*, 60 Cust. Ct. 633, C.D. 3480.

In the case at bar the collector applied the concededly correct rate of assessment to the plaintiff's entered weight rather than multiplying the ounces per square yard found in the laboratory tests by plaintiff's entered yardage. As stated above, the papers moved in evidence by plaintiff include Certificates of Origin issued by the Economic Chamber of the Peoples Republic of Croatia and signed by the Secretary which identify the merchandise of this protest by marks and numbers and give a gross and net weight. The gross and net weight on these certificates are the same gross and net weight entered by the plaintiff on the consumption entry.

In the case of *Pastene & Co., Inc.* v. *United States*, 34 Cust. Ct. 52, C.D. 1677, the United States weigher took representative samples of the imported merchandise for the purpose of determining the weight of a shipment of olive oil in tins and his determination was accepted over weights used by the collector (which were apparently those returned by the examiner), and no evidence was introduced to show the collector's weights to be more accurate than the weigher's determination.

In the instant case the United States Customs' Chief Chemist at Baltimore, Mr. Lerner, prepared a laboratory report based upon an analysis made for the purpose of seeking to find "the average yarn number." The average yarn number was arrived at by "taking the

count of the yarns per square inch, dividing it by the *laboratory determined ounces per square yard* and multiplying by a constant. . . ." (R. 6–7.) [Emphasis added.] Mr. Lerner testified that this procedure was in compliance with the statutory requirements of schedule 3, part 3, subpart A, and that the formula set forth in the statute is based in part on ounces per square yard, which is a measure of weight, and this determination is not incidental to the determination of the yarn number (which governed the classification) but is an essential part of the determination. (R. 9–10.) Though the ascertainment of the weight of the representative sample is essential to the determination of the yarn number, Mr. Lerner stated that it is not ordinarily set forth in a laboratory report except as it may be "of use to the Examiner for statistical purposes." (R. 10–11.)

The weight of the shipment as shown on the entry paper is greater than the weight arrived at by using the weight of the chemist's representative sample as a multiplier of the square yards in the shipment. The question is which weight should prevail in determining the duties on the merchandise. The Government contends that the presumption of correctness attaching to the findings of the collector precludes using weights other than those shown on the entry papers and on which it relied. The plaintiff contends that finding of the exact weight under carefully controlled conditions to determine the yarn number shown on the laboratory report is the best evidence of the weight which should be used in determining the duties, and in line with *Pastene & Co.* v. *United States, supra,* rebuts the presumption of correctness attaching to the collector's action and establishes a *prima facie* case that the collector's action was incorrect. After the introduction into evidence of the laboratory report the Government did not introduce any evidence to show that the weights shown on the entry papers were more accurate than the weights shown on the laboratory report. The court agrees with the plaintiff's contention. The true weight of imported goods must be taken as a basis of duties and not those shown on the invoice or entry papers which are at variance. *Downing & Co.* v. *United States,* 11 Ct. Cust. Appls. 310, T.D. 39128. Also, the weight used in making calculations with respect to a given shipment of merchandise should be consistent. There should not be one weight used in determining the yarn number or classification and another weight used in determining the duties.

The laboratory report makes a finding of 2.07 ounces per square yard for the 30 bales (containing 56755 sq. yds.) and the 29 bales (containing 53472 sq. yds.) ; and a finding of 2.41 ounces per square yard for the 27 bales (containing 61806 sq. yds.).

On the record presented, we are of the opinion that the weight shown on the laboratory report should prevail. Judgment will, there-

fore, be entered in favor of the plaintiff, directing the district director to reliquidate the entry, assessing duty upon the basis of the weights appearing upon the laboratory report, and to make refund accordingly.