**VERRAZZANO TRADING CORP.**

v.

**UNITED STATES.**

**C.R.D. 72–19; Port of New York
Court Nos. 70/16253–12995–69,
etc. on man-made fabric.**

United States Customs Court.

Oct. 10, 1972.

Rode & Qualey, New York City (Peter Jay Baskin, New York City, of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Gilbert Lee Sandler, New York City, trial attorney), for defendant.

I

MALETZ, Judge:

Plaintiff has moved pursuant to rule 6.5(a)(ii) for an order to compel defendant to produce for inspection and copying work notes, written data, and computations pertaining to a laboratory report of the Bureau of Customs. Defendant opposes the motion, claiming that the materials are "privileged from disclosure" by the Freedom of Information Act, 5 U.S.C. (1970 ed.) § 552,[1] and the customs regulations; and that in order to prevail, plaintiff must show a "compelling necessity" for production of the claimed privileged materials which would "outweigh the need to insulate such materials from disclosure."

The motion has its genesis in a pending action which involves the classification by the government of certain imported fabrics under item 338.30 of the tariff schedules as other woven fabrics of man-made fibers which carries a duty assessment of 22 cents per pound plus $22\frac{1}{2}$ percent ad valorem. Plaintiff argues that the fabric is in chief value of rabbit hair, and thus properly dutiable at only $15\frac{1}{2}$ percent under item 339.-10, as amended, as other woven fabrics of textile materials "not covered by the foregoing subparts of this part". Defendant, on the other hand, contends that the imported merchandise is in chief value of man-made fibers. Thus, one of the major issues in this action is component material of chief value.

Pursuant to this court's rule 6.4 plaintiff requested the government to produce for inspection, copying and/or testing: (a) the government's copy of New York Customs Laboratory Report #G17003 dealing with merchandise taken from entry 719203 of July 15, 1967; (b) all Customs Laboratory work notes, written work data, and computations pertaining to that report; and (c) a

---

[1]. P.L. 89–487, 80 Stat. 250 (1966), which amended section 3 of the Administrative Procedure Act, Ch. 324 § 3, 60 Stat. 237 (1946), 5 U.S.C. § 1002. P.L. 90–23, 81 Stat. 54 (1967), repealed P.L. 89–487 for the purpose of incorporating its provisions, without substantive change, into section 552, title 5 of the United States Code.

portion of the sample or samples used for the report so that it might be tested by an independent laboratory designated by plaintiff.

Defendant acceded to requests (a) and (c) but refused to make available the materials requested in (b) on the single ground that they "constitute work sheets, advisory opinions, and intraoffice communications which are privileged from disclosure" by § 552(b)(5) of the Freedom of Information Act—which subparagraph provides that the requirements of that Act—that each agency shall make available to the public specified information—are not applicable to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

 There is, however, a basic difficulty with the entire premise of defendant's argument. The difficulty is that the Freedom of Information Act was enacted to provide the public with the right to obtain information from administrative agencies and agencies in the executive branch of the government; it was not enacted to provide discovery procedures for obtaining information during litigation. Put otherwise, the fact that § 552(b) of the Information Act provides specified exemptions from the Act's public information requirements does not in and of itself create a judicial discovery privilege with respect to such exemptions. Thus, if the Information Act were intended to apply to judicial discovery proceedings there would be no need for the provisions of paragraph (a)(3) of the Act which gives any person who has been denied information after a request the right to file a complaint in the appropriate United States district court to compel the pro-

duction of records. This same paragraph also places the burden on the government agency to sustain its action. Further, the very language of § 552(b)(5) denies any applicability to judicial discovery proceedings:

This section does not apply to matters that are—

\* \* \* \* \* \*

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

On its face this exemption does not apply to inter- or intra-agency memorandums or letters which would be available to a party during litigation. Clearly, the defendant cannot use an administrative exemption which specifically does not cover judicial discovery as a basis for claiming a judicial discovery privilege.

## II

 But even assuming *arguendo* that the Freedom of Information Act is applicable to discovery procedures during litigation, it still would not insulate the requested materials from disclosure. At the outset, it is to be noted that the primary purpose of the Information Act was to increase the citizen's access to government records. Bristol-Myers Company v. Federal Trade Commission, 138 U.S.App.D.C. 22, 424 F.2d 935 (1970); M. A. Schapiro & Co. v. Securities and Exchange Commission, 339 F. Supp. 467 (D.C.C.1972).

Prior to 1967, section 3 of the Administrative Procedure Act, known as the Public Information Section (5 U.S.C. § 1002), had "been used as an authority for withholding, rather than disclosing, information."[2] Under its provisions

---

2. H.Rep.No.1497, 89th Cong., 2d Sess., p. 4 (1966) [hereafter House Report], 1966 U.S.Code Cong. & Admin.News, Vol. 2, p. 2421. The House Report observed at p. 5, U.S.Cong. & Admin.News, *supra*, p. 2422:

In a sense, "public information" is a misnomer for 5 U.S.C. § 1002, since the section permits withholding of Federal agency records if secrecy is required "in the public interest" or if the records relate "solely to the internal management

"agency and department heads enjoyed a sort of personal ownership of news about their units," [3] employing broad discretion to suppress information. In the face of a mounting storm of criticism from newspapermen, legislators and the general public, the Freedom of Information Act was enacted to "reverse the self-protective attitude of the agencies" [4] under which they had found that the public interest required secrecy, and to make disclosure the general rule, permitting only information specifically exempted to be withheld.

The Act reflects an intent to reach a workable balance between the right of the government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy. Accordingly, it:

(1) Eliminates the "properly and directly concerned" test of who shall have access to public records by providing that—

* * * each agency, on request for identifiable records * * * shall make the records promptly available to any person * * * [Subsection (a)(3).]

(2) Exempts from public disclosure nine specific categories of information [subsection (b)], declaring that—

This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section. This section is not authority to withhold information from Congress. [Subsection (c).]

(3) Gives an aggrieved person whose request for information is denied the right to file an action in a United States district court with the matter to be determined de novo with the burden on the agency so that the court can consider the propriety of the withholding.[5] Thus it provides that—

* * * On complaint, the district court * * * has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action. * * * [Subsection (a)(3).]

It is in this setting that we consider the government's reliance here upon the Congressional direction that the Freedom of Information Act—

§ 552(b) * * * does not apply to matters that are—

* * * * * *

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

* * * * * *

Excluded from this exemption are inter or intra-agency memoranda or letters which would ordinarily be available to a

of an agency." Government information also may be held confidential "for good cause found." Even if no good cause can be found for secrecy, the records will be made available only to "persons properly and directly concerned." Neither in the Administrative Procedure Act nor its legislative history are these broad phrases defined, nor is there a recognition of the basic right of any person—not just those special classes "properly and directly concerned"—to gain access to the records of official Government actions. Above all, there is no remedy available to a citizen who has been wrongfully denied access to the Government's public records. The present statute, therefore, is not in any realistic sense a public information statute.

See generally Davis, The Information Act: A Preliminary Analysis, 34 U. of Chic.L.Rev. 761 (1967).

3. House Report at p. 2. See also S.Rep. No.813, 89th Cong., 1st Sess., p. 3 (1965) [hereafter Senate Report].

4. Consumers Union of United States, Inc. v. Veterans Administration, 301 F.Supp. 796, 799 (S.D.N.Y.1969), appeal dismissed as moot, 436 F.2d 1363 (2d Cir. 1971).

5. House Report at p. 9, U.S.Code Cong. & Admin.News, supra, p. 2426.

party during litigation. Thus, the Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act [6] states at page 35:

Accordingly, any internal memorandum which would "routinely be disclosed to a private party through the discovery process in litigation with the agency" is intended by the clause in exemption (5) to be "available to the general public" (H.Rept., 10) unless protected by some other exemption. * * *

■ In short, the criterion for the applicability of the fifth exemption is whether the records sought are inter- or intra-agency memoranda or letters which would not be available to *any* party in *any* litigation in which the agency having the records might be involved.[7] And the standards for this test are the discovery practices as regulated by the courts. Tennessean Newspapers, Inc. v. Federal Housing Administration, 464 F. 2d 657 (6th Cir. 1972); General Services Administration v. Benson, 415 F.2d 878 (9th Cir. 1969); Consumers Union of United States, Inc. v. Veterans Administration, *supra*, 301 F.Supp. 796.

■ The scope of discovery under rule 6.1(b) of the Rules of the Customs Court and rule 26(b) of the Federal Rules of Civil Procedure, as amended, is quite broad. Both provide that unless otherwise limited by order of the court

* * * the scope of discovery is as follows:

(1) * * * Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Thus, this court and the federal district courts permit the discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." A showing of "compelling need" is not required. Nor must good cause be shown for production of documents and things. See rule 6.4(a). See also F.R.C.P., rule 34.

Against this background, there can be no doubt that the requested laboratory work notes, data, and computations are relevant to the present action. Indeed, even the government does not dispute the relevancy of the laboratory work sheets (or, for that matter, of the report itself) which indicate the procedures followed by the chemist in performing the analysis, and whether they were correctly carried out.[8]

Rather, defendant alleges that laboratory work sheets often contain the comments and corrections of the chemist performing the analysis, and that these

---

6. See Kerbec, Legally Available U. S. Government Information as a Result of the Public Information Act, Vol. 1, p. 174 (1970).

7. "The key is that disclosure is to 'the general public' and not to the party requesting disclosure. The disclosure must be made to the public if a private party— not necessarily the applicant—would routinely be entitled to it through discovery." Davis, The Information Act: A Preliminary Analysis, *supra*, p. 796.

8. Methods of testing used by government chemists in analyzing samples of imported merchandise and their accuracy are frequently crucial issues in Customs Court proceedings. See e. g., T. H. Gonzalez v. United States, 53 Cust. Ct. 149, C.D. 2487 (1964), and cases cited therein, aff'd 54 CCPA 104, C.A.D. 918 (1967); The Orient, Inc. v. United States, 64 Cust.Ct. 175, C.D. 3978 (1970); Maiden Lane Trading Corp. v. United States, 62 Cust. Ct. 277, C.D. 3744 (1969); Consolidated Cork Corp. v. United States, 54 Cust.Ct. 83, C.D. 2512 (1965).

are in the nature of communications within an agency expressing conclusions and views with respect to final decisions to be arrived at which were intended by Congress to be protected from disclosure under the fifth exemption.[9]

■ The fifth exemption, it is to be observed, was intended to reflect that part of the doctrine of executive privilege which was judicially developed to encourage for public policy reasons the free and uninhibited exchange and communications of opinions, ideas and points of view among government personnel. See e. g., Kaiser Aluminum & Chemical Corp. v. United States, 157 F. Supp. 939, 141 Ct.Cl. 38 (1958); V.E.B. Carl Zeiss, Jena v. Clark, 128 U.S.App. D.C. 10, 384 F.2d 979 (1967), cert. den. 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967.)[10] But the exemption was not intended to protect factual or scientific reports and investigations.[11] Thus, statements of fact, such as reports comparing an alternate bid for property with its fair market value, General Services Administration v. Benson, *supra*, 415 F.2d 878; written appraisal of a house, Tennessean Newspapers, Inc. v.

Federal Housing Administration, *supra*, 464 F.2d 657; interdepartmental and inter-agency communications between the Renegotiation Board and other agencies with respect to a subcontractor's performance on its renegotiable contracts, Grumman Aircraft Engineering Corporation v. Renegotiation Board, 138 U.S. App.D.C. 147, 425 F.2d 578 (1970); and the test scores of various hearing aids tested by the Veterans Administration, Consumers Union of United States, Inc. v. Veterans Administration, *supra*, 301 F.Supp. 796, have been held subject to disclosure.

It is true that the work notes, data, and computations requested here constitute internal drafts prepared by agency personnel for their own use and thus are in the nature of intra-agency memoranda. However, in the absence of proof to the contrary by the government—which under the Information Act has the burden of sustaining its action—the requested materials, all bearing on a laboratory analysis of sample merchandise, must be considered as purely objective, factual and scientific in nature and not policy or decision-making recommenda-

---

9. Although under the Information Act the burden of proof is on the government to establish that the papers come within the claimed exemption, at no point has it indicated that such "comments and corrections" appear on the materials requested herein.

10. The executive privilege is not an absolute one. Thus, if in a given case the record shows there is a need for disclosure which outweighs the need grounded in public policy to insulate the government document from disclosure, a claim of executive privilege will not be allowed. See e. g., Weiss v. United States, 180 Ct.Cl. 863 (1967); Timken Roller Bearing Company v. United States, 38 F.R.D. 57 (N.D.Ohio 1964); *cf.* e. g., Kaiser Aluminum & Chemical Corp. v. United States, *supra*, 157 F.Supp. at 947-948, 141 Ct.Cl. 38. It is to be "note[d] in passing that exemption (b)(5) seems [similarly] to involve a balancing of appellants' need with the Government's right of privilege." American Mail Line, Ltd. v. Gulick, 133 U.S.App.D.C. 382, 411 F.2d 696, 703 (1969).

11. The Senate Report stated (pp. 13-14):
Exception No. 5 would exempt "intra-agency or inter-agency memoranda or letters dealing solely with matters of law or policy." This exemption was made upon the strong urging of virtually every Government agency. It is their contention, and one that the committee believes has merit, that there are certain governmental processes relating to legal and policy matters which cannot be carried out efficiently if they must be carried out "in a goldfish bowl." Government officials would be most hesitant to give their frank and conscientious opinion on legal and policy matters to their superiors and co-workers if they knew that, at any future date, their opinions of the moment would be spread on the public record. The Committee is of the opinion that the Government cannot operate effectively or honestly under such circumstances. Exception No. 5 has been included to cover this situation, and it will be noted that there is no exemption for matters of a factual nature.

tions. In fact, it would appear that the materials contain the basic data on which advisory opinions and recommendations are based.[12] Therefore, we find that the work sheets are not the type of intra-agency memoranda which are exempted from disclosure by § 552(b)(5).[13]

■ While ordinarily a report claimed to contain privileged statements may be inspected in camera by the judge who may, if he finds such privileged material, order it deleted,[14] that precautionary move seems unwarranted here, absent any such specific claim. Moreover, bearing in mind that the Information Act's exemptions should be narrowly construed,[15] a chemist's "comments" regarding his tests and computations appear to us to be outside the scope of the claimed exemption.

For the reasons stated, plaintiff's motion to compel production of all Customs Laboratory work notes, written work data, and computations pertaining to New York Customs Laboratory Report #G17003 is granted. It is therefore ordered that within 10 days after entry of this Order, defendant shall produce the above documents for inspection and copying by plaintiff, with such production to be at a place mutually agreeable to the parties.

12. The Bureau of Customs' regulation cited by defendant [19 CFR § 103.7], listing classes of customs documents exempt from disclosure, is not in derogation of our finding that the work sheets are not exempted under the Freedom of Information Act. That regulation, which does not allow to be "inspected, copied or otherwise obtained"—

 \* \* \* \* \*

(e) Interagency or intra-agency memoranda or letters which would not be available by law to a private party in litigation. This information includes, but is not limited to, memoranda expressing, the views of subordinates, comments endorsing or dissenting from conclusions reached in official rulings, work papers, and other informal expressions of view, certain documents addressed to other Government agencies (unless such documents are released for disclosure by the recipient).

 \* \* \* \* \*

applies the same fact versus policy distinction inherent in exemption (5). In any event, if there were a conflict the clear statutory directive must prevail over the agency regulation. Nichols v. United States, 74 U.S. (7 Wall.) 122, 129, 19 L.Ed. 125 (1868).

13. Another reason for the exemption of "policy-making" memoranda is to prevent premature disclosure of matters pertaining to litigation with an agency. Long v. United States Internal Revenue Service, 339 F.Supp. 1266 (W.D.Wash.1971); House Report at pp. 5–6; Attorney General's Memorandum, supra, at pp. 35–36. In view of the pending proceedings here in which a complaint and answer have been filed, there is patently no basis for fear of premature disclosure of the work sheets.

14. See e. g., Sterling Drug Inc. v. Federal Trade Commission, 146 U.S.App.D.C. 237, 450 F.2d 698 (1971); Soucie v. David, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971); Grumman Aircraft Engineering Corporation v. Renegotiation Board, supra, 425 F.2d 578; Cowles Communications, Inc. v. Dept. of Justice, 325 F. Supp. 726 (N.D.Cal.1971); Wecksler v. Shultz, 324 F.Supp. 1084 (D.C.C.1971).

15. Sterling Drug Inc. v. Federal Trade Commission, supra, 450 F.2d 698; Bristol-Myers Company v. Federal Trade Commission, supra, 424 F.2d 935; M. A. Schapiro & Co. v. Securities and Exchange Commission, supra, 339 F.Supp. 467.