**VERRAZZANO TRADING CORP.**
**v.**
**UNITED STATES.**
**C.R.D. 73–9; Court No. R70/7309.**

United States Customs Court.
April 4, 1973.

Rode & Qualey, New York City (Peter Jay Baskin, New York City, of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Gilbert Lee Sandler, New York City, trial attorney), for defendant.

## OPINION AND ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY

NEWMAN, Judge:

We are faced with a question of novel impression respecting the permissible scope of discovery into the Government's subsidiary findings entering into its ap-

praisements on the basis of constructed value.[1]

This is an appeal for reappraisement filed pursuant to section 501 of the Tariff Act of 1930, as amended (19 U.S.C. § 1501 (1964)). Plaintiff has moved, pursuant to rules 6.3(a)[2] and 6.5(a)(1)(i),[3] for an order compelling defendant to answer certain interrogatories as to which the Government has vigorously responded with objections.

■ It appears from the pleadings, that one of the issues to be tried in the pending appeal for reappraisement is whether the constructed values determined by the Government or the lower constructed values claimed by plaintiff represent the proper dutiable values of the merchandise. For plaintiff to prevail on its claim, two steps are necessary: First, plaintiff must rebut the presumption of correctness attaching to the appraised values;[4] second, plaintiff must prove the constructed values it claims.[5]

The interrogatories served on defendant comprise sixteen questions, some containing several parts, all of which relate to the appraisements challenged by plaintiff. Defendant has answered interrogatories numbered 1, 2a, b, c, d, 3, 8, 9, 15 and 16, but objects to answering interrogatories numbered 4a, b, c, d, e, 5, 6, 7, and 10 through 14.[6]

1. Section 402(d) of the Tariff Act of 1930, as amended (19 U.S.C. § 1401a(d) (1970)).

2. So far as pertinent, rule 6.3(a) provides: "* * * The party submitting the interrogatories may move for an order under Rule 6.5 with respect to any objection to or other failure to answer an interrogatory".

3. Rule 6.5(a)(1)(i) provides: "(a) Motion for Order Compelling Discovery: Upon reasonable notice to other parties and all persons affected thereby, a party may apply for an order compelling discovery as follows: (1) *Motion*: (i) If a deponent or a party fails to answer a question propounded or submitted under Rules 6.3, 7.3, or 7.4, the party seeking discovery may apply for an order compelling an answer".

4. 28 U.S.C. § 2635 (1970).

5. Minkap of California, Inc. v. United States, 55 CCPA 1, C.A.D. 926 (1967).

6. These interrogatories and objections thereto are as follows:

"4. In arriving at the appraisal values * * * what were the precise monetary figures employed insofar as the following elements are concerned. a. Cost of materials. b. Cost of fabrication for producing the subject merchandise. c. The amount of general expenses and profit. d. Cost of all containers and coverings. e. *Other expenses incidental to placing* the subject merchandise in condition, packed ready for shipment to the United States".

"5. Where and how were the figures obtained which were used to determine the amounts set forth in interrogatories 4a, 4b, 4c, 4d and 4e?"

"6. In obtaining the amounts for general expenses and profit given in answer to interrogatory 4c, did Customs resort to the expenses and profits of manufacturers other than the manufacturer of the subject merchandise?"

"7. If the answer to interrogatory 6 is yes, list the manufacturers, and their addresses, other than the manufacturer of the subject merchandise, upon which Customs relied in determining the amounts for general expenses and profits".

"10. Specifically describe the articles manufactured in Italy in 1968 and 1969 and sold for shipment to the United States which were found by Customs to be of the same class and kind as the subject merchandise".

"11. Identify by name and address the Italian companies which manufactured the specific articles listed in answer to interrogatory 10".

"12. Did Customs determine that the manufacturer of the subject merchandise was the only manufacturer in Italy in 1968 and 1969 which sold merchandise of the same class or kind for shipment to the United States as the subject merchandise?"

"13. If the answer to interrogatory 12 is no, list all the other manufacturers, in Italy in 1968 and 1969, and their addresses which were found by Customs to have sold merchandise of the same class or kind for shipment to the United States as the subject merchandise".

"14. If there are manufacturers listed in answer to interrogatory 13, what exact procedure did Customs employ in its determination that these manufacturers sold

The basic issue is whether the Government's subsidiary findings entering into the appraisements are within the permissible scope of discovery under rule 6.1(b)(1).

### 1.

■ Rule 6.1(b)(1) states in part: " * * * the scope of discovery is as follows: (1) * * * Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * * ". Hence, the basic philosophy of the foregoing rule is that at the pretrial stage of an action each party is entitled to the disclosure of all relevant information in the possession of the other party, unless of course, the information is privileged.

Thus, in Verrazzano Trading Corp. v. United States, 349 F.Supp. 1401, 69 Cust.Ct. ——, C.R.D. 72–19 (1972), the court observed:

> The scope of discovery under rule 6.1(b) of the Rules of the Customs Court and rule 26(b) of the Federal Rules of Civil Procedure, as amended, is quite broad. * * * A showing of "compelling need" is not required. Nor must good cause be shown for production of documents and things. See rule 6.4(a). See also F.R.C.P., rule 34.

And again, in Gimbel Bros., Inc. v. United States, 69 Cust.Ct. ——, C.R.D. 72–25 (1972):

> * * * the discovery rules of this court were broadly drawn so as to enable the parties to obtain information, as well as evidence, that would aid in preparation for trial * * *.

■ It is fundamental that interrogatories (the discovery vehicle involved in this matter) serve to facilitate trial preparation, obtain facts, narrow issues, and reduce the chance of surprise. United States v. Article of Drug, Etc., 43 F.R.D. 181, 188 (D.Del.1967). Moreover, it has been held that the utmost liberality should prevail in allowing a wide scope to the legitimate use of interrogatories.[7] Aktiebolaget Vargos v. Clark, 8 F.R.D. 635 (D.D.C.1949). See also Bordonaro Bros. Theatres, Inc. v. Loew's, Inc., 7 F.R.D. 210 (W.D.N.Y. 1947); Laugharn v. Zimmelman, 28 F. Supp. 348 (S.D.N.Y.1939). And see, Moore's Federal Practice (2d ed.), Vol. 4, ¶ 26.02; Vol. 4A, ¶ 33.10.

### 2.

Against this background, I shall initially consider defendant's objection that: "The action of Customs in appraising the instant merchandise is self-evident and does not require further elucidation. The appraisement speaks for itself as a unitary value required to be found by law".

In arriving at a constructed value under section 402(d), the appraising official is required to make a number of "subsidiary findings" or determinations in accordance with the statutory elements of such value. Section 402(d), Tariff Act of 1930, as amended (19 U. S.C. § 1401a(d) (1970)) reads:

> (d) *Constructed value.*—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—
>
> (1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the

merchandise for shipment to the United States of the same class and kind as the subject merchandise?"

7. While a broad scope of discovery is permissible, the parties must keep in mind that the rules of evidence may restrict the use at trial of much of the information discovered. See Independent Productions Corp. v. Loew's, Inc., 30 F.R.D. 377, 381 (S.D.N.Y.1962).

merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

■ What plaintiff seeks to discover by a series of specific interrogatories (see footnote 6) are the subsidiary factual findings and determinations of the Government in connection with the challenged appraisements and the basis (if any) for such findings. On this aspect, it must be concluded that the action of the appraising official under section 402 (d) is not self-evident from simply the appraised values *per se;* and that insofar as the information which plaintiff seeks to discover is concerned, the appraisements do not speak for themselves. Furthermore, the requirement in 19 U.S.C. § 1500 (1970) that the appraisement be in the form of a unit value is entirely irrelevant to the question of whether the subsidiary findings are discoverable.

### 3.

■ I now reach the Government's claim of privilege, which was not made in response to the interrogatories, but rather was raised for the first time in its brief opposing plaintiff's motion to compel discovery.[8]

Defendant insists that the matters which plaintiff seeks to discover constitute intra-agency communications in the nature of advisory opinions and recommendations, which are privileged. True, the doctrine of "executive privilege" respecting intra-governmental documents reflecting advisory opinions, recommendations and deliberations, is well established.[9] However, I see nothing in the interrogatories which even remotely suggests that plaintiff seeks discovery of any advisory opinions or recommendations. At the expense of repetition, it is emphasized that the series of interrogatories call for specific answers reflecting purely objective factual data.

The distinction between allowing discovery of objective factual data and intra-governmental memoranda containing deliberative material or advisory opinions was recently recognized and applied by the Supreme Court and this Court in decisions construing the application of the fifth exemption in the Freedom of Information Act of 1966.[10] In Environmental Protection Agency v. Mink, 410

8. There would appear to be a question of whether any privilege was waived by defendant's failure to assert such objection in response to the interrogatories prior to service of a copy on plaintiff. However, since this question was not raised by plaintiff, it will be pretermitted.

9. Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958); United States v. Article of Drug, Etc., 43 F.R.D. 181, 190 (D.Del. 1967); Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C.1966), aff'd sub nom, V.E.B. Carl Zeiss, Jena v. Clark, 128 U.S.App.D.C. 10, 384 F.2d 979 (1967), cert. den., 389

U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967); Timken Roller Bearing Co. v. United States, 38 F.R.D. 57 (N.D.Ohio 1964).

10. 5 U.S.C. § 552 (1970):
"(a) Each agency shall make available to the public information as follows:
\*      \*      \*      \*      \*
(b) This section does not apply to matters that are—
\*      \*      \*      \*      \*
(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency".

U.S. 73, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973), the Supreme Court stated:

* * * Still, the legislative history of Exemption 5 demonstrates that Congress intended to incorporate generally the recognized rule that "confidential intra-agency advisory opinions . . . are privileged from inspection." Kaiser Aluminum & Chemical Corp. v.· United States, 157 F.Supp. 939, 946 (Ct. of Cl.1958) (Mr. Justice Reed). * * *

* * * * * *

* * * But the privilege that has been held to attach to intragovernment memoranda clearly has finite limits, even in civil litigation. In each case, the question was whether production of the contested document would be "injurious to the consultative functions of government that the privilege of nondisclosure protects." *Kaiser Aluminum & Chemical Corp.*, *supra*, at 946. Thus, in the absence of a claim that disclosure would jeopardize state secrets, see United States v. Reynolds, 345 U.S. 1 [, 73 S.Ct. 528, 97 L.Ed. 727] (1953), memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government. [See cases cited in footnote 14.] * * *

And in *Verrazzano Trading Corp., supra,* Judge Maletz noted:

The fifth exemption, it is to be observed, was intended to reflect that part of the doctrine of executive privilege which was judicially developed to encourage for public policy reasons the free and uninhibited exchange and communications of opinions, ideas and points of view among government personnel. See e. g., Kaiser Aluminum & Chemical Corp. v. United States, ·157 F.Supp. 939 (Ct.Cl.1958); V. E. B. ·Carl Zeiss, Jena v. Clark, 384 F.2d 979 (D.C.Cir.1967), cert. den, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361

(1967). But the exemption was not intended to protect factual or scientific reports and investigations. Thus, statements of fact, such as reports comparing an alternate bid for property with its fair market value, General Services Administration v. Benson, *supra,* 415 F.2d 878; written appraisal of a house, Tennessean Newspapers, Inc. v. Federal Housing Administration, *supra,* 464 F.2d 657; interdepartmental and inter-agency communications between the Renegotiation Board and other agencies with respect to a subcontractor's performance on its renegotiable contracts, Grumman Aircraft Engineering Corporation v. Renegotiation Board, 425 F.2d 578 (D.C.Cir.1970); and the test scores of various hearing aids tested by the Veterans Administration, Consumers Union of United States, Inc. v. Veterans Administration, *supra,* 301 F.Supp. 796, have been held subject to disclosure.

It is true that the work notes, data, and computations requested here constitute internal drafts prepared by agency personnel for their own use and thus are in the nature of intra-agency memoranda. However, in the absence of proof to the contrary by the government—which under the Information Act has the burden of sustaining its action—*the requested materials, all bearing on a laboratory analysis of sample merchandise, must be considered as purely objective, factual and scientific in nature and not policy or decision-making recommendations. In fact, it would appear that the materials contain the basic data on which advisory opinions and recommendations are based.* * * * [Emphasis added.] [Footnote references omitted.]

■ Moreover, even assuming *arguendo* that plaintiff is seeking discovery of intra-agency communications in the nature of advisory opinions and recommendations, a claim of executive privilege has not been properly invoked by defendant. In United States v. Rey-

nolds, 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953), the Supreme Court held:

> * * * There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.

In Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 40 F.R.D. 318 (D.D.C. 1966),[11] at page 327, n. 33, the Court pointed out that "[w]hile Reynolds involved military secrets, subsequent decisions have uniformly applied the guidelines it expressed irrespective of the particular kind of executive claim advanced. * * *" See *Zeiss, supra,* at page 324, n. 15 for a compilation of cases.

Here, there has been no formal assertion of executive privilege by the Secretary of the Treasury or the Commissioner of Customs. Consequently, a basic prerequisite to asserting such claim of privilege in connection with intra-agency advisory opinions and recommendations has not been established.

### 4.

Finally, I shall consider defendant's objection that interrogatories 5 through 7 and 10 through 14 "probe the thought processes of the appraising official".

In my view, plaintiff's interrogatories, which are designed to elicit a purely factual recital concerning the subsidiary findings entering into the appraised values, do not constitute an objectionable probing of the mental processes of the appraising officer.

Although not involving the permissible scope of discovery under the new rules of the Court, Bud Berman Sportswear, Inc. v. United States, 55 Cust.Ct. 574, 583, R.D. 11056 (1965), aff'd, United States v. Bud Berman Sportswear, Inc., 57 Cust.Ct. 733, 735, A.R.D. 211

(1966), aff'd, 55 CCPA 28, C.A.D. 929 (1967), has pertinency to the present problem. In *Burd Berman,* the Government objected at the trial that counsel for plaintiff was attempting to inquire into the mental processes by which the appraisement was determined. The Court held that a *per se* appraisement (f. o. b. port of exportation prices) was constructively separable on the basis of testimony of the customs examiner— which testimony was elicited over the Government's objection—as to how the appraised value was determined. The examiner testified that the figures used to represent export value were his concept of f. o. b. Hong Kong values, which were calculated by adding the inland charges, as set forth on the invoice, to the ex-factory unit prices shown therein. In that calculation, the examiner ascertained that the charges constituted 2.3 percent of the total, and he added that percentage to the ex-factory unit prices as shown. The parties then stipulated that the assistant appraiser had approved the action of the examiner.

Here, as in *Bud Berman,* plaintiff is not attempting to probe the mental processes of the appraising official, but is attempting only to learn the underlying or subsidiary facts respecting the appraisements. Such inquiry, in my opinion, is within the permissible scope of discovery under rule 6.1(b)(1). Defendant's objection is overruled.

In summary, and for the reasons stated, plaintiff's motion to compel defendant to answer interrogatories, 4a, b, c, d, e, 5 through 7; and 10 through 14, is granted and all objections thereto are overruled. It is, therefore, ordered that within thirty (30) days after entry of this order, defendant shall serve on plaintiff answers to the above enumerated interrogatories; and it is further ordered that the answers are to be signed by the person making them, in compliance with rule 6.3.

---

11. Aff'd sub nom., V. E. B. Carl Zeiss, Jena v. Clark, 128 U.S.App.D.C. 10, 384 F. 2d 979 (1967), cert. den., 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).