**GENERAL SERVICES ADMINISTRA-
TION, Appellant,**

v.

**Henry BENSON, Appellee.**

No. 22862.

United States Court of Appeal
Ninth Circuit.

Aug. 26, 1969.

Stephen R. Felson (argued), Edwin L. Weisl, Jr., Asst. Atty. Gen., John C. Eldridge, Atty., Dept. of Justice, Washington, D. C., Eugene G. Cushing, U. S. Atty., Seattle, Wash., for appellant.

Don Paul Badgley (argued) of Bogle, Gates, Dobrin, Wakefield & Long, Seattle, Wash., for appellee.

Before BARNES and MERRILL, Circuit Judges, and McNICHOLS, District Judge *.

BARNES, Circuit Judge:

This is an appeal from a judgment of the district court, enjoining the General Services Administration, its officers and employees, from withholding from appellee certain records which are described in the opinion of the district court, reported at 289 F.Supp. 590 (W.D.Wash. 1968). This court has jurisdiction under 28 U.S.C. § 1291.

Appellee, Henry Benson, was a member of a partnership which purchased certain property from the General Services Administration. After reselling the property, the partnership became involved in a dispute with the Internal Revenue Service over whether the profit from the resale should be characterized as a long-term or a short-term capital gain. In order to prove the correct characterization of the profit, appellee requested G.S.A. to make available its records concerning the transaction. The Government refused the request, and after further denial following administrative review, the taxpayer filed the suit below to compel production of the documents in question.

The district court, after taking testimony and examining the disputed documents in camera, ordered all of them produced, except two credit reports. The court concluded that the information contained in the requested documents was needed to clarify the nature of the transaction, and that G.S.A. had failed to sustain its action in withholding the records, as required in the Public Information Section of the Administrative Procedure Act, 5 U.S.C. § 552(a) (3). We agree, and we affirm the judgment of the district court.

We first note that this case does not involve any claim of executive privilege, for no such claim has been directly raised. But the Government claims that "internal agency recommendations, deliberations, etc., involved in this case, *since they are subject to a claim of executive privilege,* 'would not be available by law to a party other than an agency in litigation with the agency,' and thus are exempt from disclosure under the Act." (Government's Brief, page 6, emphasis added.)

■ We reject this attempt to rely on a claimed executive privilege that is invoked by inference alone, and where no formal claim exists. United States v. Reynolds, 345 U.S. 1, 7–8, 73 S.Ct. 528, 97 L.Ed. 727 (1953). We agree with the Government's position that the controlling statute in this case is 5 U.S.C. § 552, and particularly subsections (a) (3) and (b) (4) and (5). Subsection (a) (3) provides that each agency make available to the public identifiable records, when requested in accordance with published rules. Subsection (b) thereafter provides, in relevant part that the section does not apply to matters that are "(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential," or

---

* Hon. Ray McNichols, United States District Judge, Boise, Idaho, sitting by designation.

"(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

The Government here contends that the documents in question are exempt under category (5) as memorandums which would not be available in litigation. The Government maintains that the two appraiser's reports are also exempt under category (4), as containing "commercial information" which is "confidential."

We turn first to category (5), since it is claimed that this provision covers all the documents here in question.

Appellee points to a regulation of G.S.A. appearing in 41 C.F.R. §§ 105–60, 105–2. It provides:

> "Requests for GSA records or other informational materials may be denied if disclosure is exempted under the provisions of 5 U.S.C. 552, as outlined in Subpart 105–60.6, or precluded by executive privilege (see § 105–60.603). However, authority for nondisclosure will not be invoked unless there is a compelling reason to do so. In the absence of such compelling reason, records and other information will be disclosed although otherwise subject to exemption."

■ Regulations reasonably adapted to the administration of a congressional act, and not inconsistent with any statute, have "the force and effect of law." G. L. Christian & Associates v. United States, 320 F.2d 345, 350, 160 Ct.Cl. 58 (1963); cf. United States v. California Portland Cement Co., 413 F.2d 161 (9th Cir., 1969).

■■ In the present case, G.S.A. has not demonstrated any such "compelling reason." Aside from the regulation, however, there is further reason to grant appellee the access to the records that he seeks. As discussed by the court below and by the court in Consumers Union of United States, Inc. v. Veterans Administration, 301 F.Supp. 796 (S.D.N.Y. 1969), to determine if the requirements of the fifth exemption are met,

the court must inquire whether the records sought are inter- or intra-agency memoranda or letters which would not be available to any party in any litigation in which the agency having the records might be involved. And the standards for decision are the discovery practices, as regulated by the courts. "The law" is to determine what is available. Cf. Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600, 603 (5th Cir. 1966).

■■ We hold that Federal Rule of Civil Procedure 26(b) is sufficiently broad to entitle discovery of the records in dispute, especially insofar as they are factual material rather than documents which comprise the administrative reasoning process of government.

In exercising the equity jurisdiction conferred by the Freedom of Information Act, the court must weigh the effects of disclosure and nondisclosure, according to traditional equity principles, and determine the best course to follow in the given circumstances. The effect on the public is the primary consideration.

Those cases cited by the Government do not compel a contrary conclusion. In Freeman v. Seligson, 405 F.2d 1326, 1338–1340 (D.C.Cir.1968), the court did not rule upon claims of privilege, but, rather, merely "[laid] down general guidelines in this regard, leaving determinations as to specific documents for such time as the issue [developed] precisely." Id. at 1339. Speaking in this context, the court then stated that many of the papers sought contained intra- and inter-agency advisory opinions and recommendations submitted for consideration in the performance of decision and policy-making functions, and that a claim of exemption, if appropriately advanced and supported, would preclude disclosure of these documents. The court also noted that other materials were alleged to contain information supplied with the understanding that it would be kept confidential, and that the district court would be required to rule later upon the privileged nature of these materials.

The documents involved in the instant case appear to differ from those in Freeman v. Seligson, *supra*. For example, exhibits A and B, described in Benson v. General Services Administration, D.C., 289 F.Supp. 590, 591, are not merely advisory opinions submitted for policy-making purposes. Rather, once exhibit A (the disposal plan) was approved, "it was to be followed by the regional office in making the disposal;" and the memorandum described as exhibit B "was used as a guide for higher authority and as a record of the reasons for the action taken." Thus, documents A and B took on the character of "statements of policy and interpretations which have been adopted by the agency and are not published in the Federal Register"—a category of materials specifically available to the public under 5 U.S.C. § 552(a) (2) (B). Those documents described as exhibits C through L appear to contain largely statements of fact, rather than mere recommendations for decision-making. For example, exhibit C "compares the alternate bid with the fair market value for the parcel," while exhibit D "discusses the bids as compared with fair market value."

Given the nature of the exhibits sought by appellee, we must conclude that their disclosure would not bring about those dangers contemplated in Freeman v. Seligson and Davis v. Braswell Motor Freight Lines, Inc., both *supra*. For the same reason, we distinguish Machin v. Zuckert, 114 U.S.App. D.C. 335, 316 F.2d 336 (1963), in which memoranda reflecting recommendations and deliberations on Air Force policy were held immune from revelation; Boeing Airplane Co. v. Coggeshall, 108 U.S. App.D.C. 106, 280 F.2d 654 (1960), in which recommendations as to Renegotiation Board decisions and policies were protected against normal production requirements; Kaiser Aluminum & Chem. Corp. v. United States, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958), in which an advisory opinion on intra-office policy was protected (and in which the court states at 944 that if the Special Assistant had played a part in the operative events, *e. g.*, determination of costs or values, a different situation might exist); and Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 40 F.R.D. 318 (D.D.C.1966), aff'd sub nom. per curiam, Carl Zeiss, Jena v. Clark, 128 U.S.App.D.C. 10, 384 F.2d 979, cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967), in which intra-governmental memoranda and opinions reflecting decision and policy-making processes were held privileged. In the last case, the court also noted that the necessity for production is sharply reduced where an available alternative for obtaining the desired evidence has not been explored. Such is not the present case.

With regard to the claim of privileged information, see generally United States v. Reynolds, *supra*, and Olson Rug Co. v. NLRB, 291 F.2d 655, 661 (7th Cir. 1961), for further background. See also, Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 792, 797 (1967).

■ We now turn briefly to a consideration of the fourth category of exemption under the Freedom of Information Act—trade secrets and commercial or financial information obtained from a person and privileged or confidential. The Government contends that this exemption applies to the two appraisal reports. The district court concluded, however, "that this exemption clearly condones withholding information only when it is obtained from a person outside the agency, and that person wishes the information to be kept confidential." 289 F.Supp. at 594; and see citations therein. The district court further stated that "the exemption is meant to protect information that a private individual wishes to keep confidential for his own purposes, but reveals to the government under the express or implied promise by the government that the information will be kept confidential." *Id.* This conclusion as to the meaning of "confidentiality" seems correct. See S. REP. No. 813, 89th Cong., 1st Sess. 9 (1965).

The Government does not here contend that appraisal reports are kept confidential by the appraiser on his own behalf, as would be the case where a patient revealed information to the Government which was subject to the doctor-patient privilege. Thus, we hold that the appraisal reports are not "confidential" within the meaning of the statute, and that G.S.A. has not sustained its burden with regard to proving the privileged nature of these reports.

The judgment of the district court is affirmed.