**SAVE THE DOLPHINS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF
COMMERCE, Defendant,**

Joseph M. Medina, Jr., Intervenor.

No. C-74-0026-CBR.

United States District Court,
N. D. California.

Nov. 17, 1975.

Paul Fitting, Joel E. Boxer, Charles G. Miller, San Francisco, Cal., for plaintiff; Victor H. Kramer, Richard B. Wolf, Andrew V. Hecht, Institute for Public Interest Representation, Washington, D. C., of counsel.

James L. Browning, Jr., U. S. Atty., Richard F. Locke, Asst. U. S. Atty., San Francisco, Cal., for defendant.

Quentin L. Kopp, James F. Thacher, Thacher, Jones, Casey & Ratcliff, San Francisco, Cal., for intervenor.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This is yet another action brought under the Freedom of Information Act, 5 U.S.C. § 552. Plaintiff, a nonprofit corporation whose primary purpose is to inform the citizens of the United States of the incidental killing of dolphins by the purse seine nets used by tuna fishing boats, seeks a copy of a motion picture film made by the National Marine Fisheries Service (NMFS), a part of defendant United States Department of Commerce.[1] Defendant, an agency within the definition of 5 U.S.C. § 551(1), is subject to the mandate of the Freedom of Information Act. Jurisdiction lies in this Court by virtue of 5 U.S.C. § 552(a)(3). The case is now before the Court on plaintiff's motion for summary judgment.

In November and December of 1971, NMFS chartered the purse seiner, M/V Queen Mary, with its captain, Joseph M. Medina, Jr., and its crew for a research cruise in a part of the eastern Pacific Ocean closed to tuna fishing during that time of the year. The purpose of the cruise was to conduct experiments relating to the development of equipment and methods designed to improve porpoise rescue operations in tuna fishing. Medina's compensation for the use of his vessel and crew was the right to keep up to 500 tons of tuna caught during the cruise.

It appears that neither motion picture films nor photographs had been mentioned either in negotiations or in the actual charter agreement. On or about November 18, 1971, Medina expressed to Dr. William Evans, the government research team leader, his concern about the motion picture equipment which had been loaded onto the vessel. Medina sought assurances that first, the filming would not interfere with the operation of the vessel, and second, the films would not be shown to anyone but those involved in the research, since the scenes therein would depict fishing trade secrets and commercial information used by Medina's crew. Evans assured Medina that the films would be used only for research purposes and would not be made available to the public. Medina asserts

1. The National Oceanic and Atmospheric Administration (NOAA) is a primary operating unit of the Department of Commerce. One of the components within NOAA is the National Marine Fisheries Service (NMFS).

that he would not have permitted filming but for the promise of confidentiality given by Evans.[2] NMFS filmed activities which occurred during the cruise and later edited approximately 5,000 feet of film to produce an 800-foot motion picture film, which has not been released to the public.

The present controversy began when plaintiff requested that defendant make the motion picture film available under the Freedom of Information Act. Defendant agreed to comply with the request on the condition that plaintiff obtain the consent of Medina, owner of the M/V Queen Mary. Medina denied consent. Plaintiff administratively appealed the agency action and, finding no relief, filed suit on January 4, 1974.

On April 1, 1974, this Court granted Joseph M. Medina, Jr.'s motion to intervene, and on May 6, 1974, denied both plaintiff's and defendant's motions for summary judgment.

A primary reason for the intervenor's opposition to plaintiff's original motion for summary judgment had been the inclusion of tuna fishing trade secrets in the motion picture film. Accordingly, after several viewings both *in camera* and among the parties and their representatives, the film was jointly re-edited on two separate occasions to eliminate any trade secrets that may have been contained therein. Plaintiff now renews its motion for summary judgment on the ground that since the film has been cleansed of trade secrets and confidential information, it does not fall within any of the exceptions to the disclosure requirements of the Freedom of Information Act. Defendant agrees with plaintiff and no longer opposes plaintiff's motion for summary judgment. Intervenor, however, continues its opposition.

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Intervenor contends that the following are unresolved issues as to material facts: [3]

1. Do the terms and conditions of the charter agreement between NMFS and intervenor contemplate and encompass the filming of the experiment?

2. Was an oral agreement entered into subsequent to the written charter agreement between Joseph M. Medina, Jr., and NMFS through William E. Evans?

3. If so, did the agreement encompass within its terms in return for the right to film the experiment:

a. A restriction of the use of any film solely for research purposes?

b. A restriction of the use of the film based on a pledge of confidentiality in favor of Joseph Medina which may be released only on assent by him? and

c. A restriction of non-dissemination of the film outside the Naval Undersea Research and Development Center?

4. Did William E. Evans have the authority to bind the agency by means of his oral promise?

5. Was the promise of confidentiality the prime inducement for Medina's consent to filming?

For the purpose of determining whether plaintiff's renewed motion for summary judgment should be granted, it will be assumed that all of the factual issues listed above are resolved in intervenor's favor. Given that assumption,

---

2. The facts relating to Medina's concerns and Evans' promise of confidentiality, here viewed in the light most favorable to intervenor, are found in Medina's affidavit dated March 25, 1974.

3. See Intervenor's Memorandum of Points and Authorities in Opposition to Plaintiff's Renewed Motion for Summary Judgment, dated July 7, 1975.

the question is whether plaintiff is entitled to judgment as a matter of law.

Four legal issues arise. The first is whether a motion picture film is a "record" subject to the disclosure requirements of the Freedom of Information Act. The second is whether an agency subject to the Act is required by 5 U.S. C. § 552(a)(3) to make available to members of the public upon request records which, although not falling within any of the exceptions in 5 U.S.C. § 552 (b), were obtained from an individual upon the express promise by the agency that the records would be kept confidential. The third legal issue is whether the motion picture film in this case is "confidential" commercial information within the meaning of 5 U.S.C. § 552(b) (4). The fourth issue raised by plaintiff is whether this Court has equitable jurisdiction to require that the film, when released, be accompanied by a disclaimer informing viewers that the scenes therein were filmed in experimental situations and do not necessarily reflect commercial fishing operations.[4]

The applicable portions of the Freedom of Information Act, 5 U.S.C. § 552, provide as follows:

"(a) Each agency shall make available to the public information as follows:

\* \* \* \* \* \*

"(3) Except with respect to the records made available under paragraphs (1) and(2) of this subsection, each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complaint re-

sides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action.

\* \* \* \* \* \* .

"(b) This section does not apply to matters that are—

\* \* \* \* \* \*

"(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential; .

\* \* \* \* \* \*

"(c) This section does not authorize withholding of information or limit the availability of records to the public, except as specifically stated in this section \* \* \*."

The first question is whether the film sought by plaintiff is a "record" within the meaning of the Act. The term is not defined in the Act. Neither do existing judicial interpretations appear helpful in regard to the precise question here presented. Plaintiff argues that *Nichols v. United States*, 325 F.Supp. 130 (D.Kan.1971), *aff'd*, 460 F.2d 671 (10 Cir. 1972), *cert. denied*, 409 U.S. 966, 93 S.Ct. 268, 34 L.Ed.2d 232 (1972), includes x-ray photographs as records. However, the court in that case merely expressed its opinion that the phrase "record" includes "[t]he written diagnosis or findings made by the Bethesda Hospital radiologist from his X-ray study of X-ray films \* \*." 325 F.Supp. at 137. On the other hand, intervenor does not appear justified in

4. An order of this Court dated September 22, 1975, required that any showing or reproduction of any frame of the motion picture film be accompanied by the following disclaimer:

"The following scenes depicted in this film were obtained during government controlled situations in which experiments were conducted and do not necessarily reflect commercial fishing operations."

his assertion that the district court in *Nichols* defined "record" to be a writing.

In response to the Freedom of Information Act, the General Services Administration has adopted the following definition:

"*Records.* The term 'records' means all books, papers, maps, photographs, or other documentary materials, regardless of physical form or characteristics, made or received by GSA in pursuance of Federal law or in connection with the transaction of public business and preserved or appropriate for preservation as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of GSA or because of the informational value of data contained therein." 41 C.F.R. § 105–60.104(a).

The definition of the term given in the "Disposal of Records" chapter of the Public Printing and Documents Act similarly includes "books, papers, maps, photographs, or other documentary materials, regardless of physical form or characteristics * * *." 44 U.S.C. § 3301. However, regulations promulgated by defendant Department of Commerce in regard to "Public Information", 5 U.S.C. § 552, do not define "records".

The object of the Freedom of Information Act is to make available to the public "information" in the possession of government agencies. 5 U.S.C. § 552(a). The term "records" in common parlance includes various means of storing information for future reference. There does not appear to be any good reason for limiting "records" as used in the Act to written documents. The motion picture film in question was made in order to store the information it now contains; it therefore falls within the definition of "records" in 5 U.S.C. § 552.

■ Intervenor contends that even if the film is a "record" within the meaning of the Act, information obtained by a promise of confidentiality on the part of an agency should not be subject to the disclosure requirements. That argument has been rejected by this court in *Legal Aid Society of Alameda County v. Schultz*, 349 F.Supp. 771, 776 (N.D.Cal.1972), as well as by other courts, *Robles v. Environmental Protection Agency*, 484 F.2d 843, 846 (4 Cir. 1973); *Tax Reform Research Group v. Internal Revenue Service*, Civil No. 559–73 (D.D.C., April 17, 1974), Memorandum, pp. 5–6. Were intervenor's theory to be accepted, an agency, by handing out promises of confidentiality, could undermine the Act's guarantee of *de novo* judicial review as to whether a record is being improperly withheld. Accordingly, the promise of confidentiality given by Dr. Evans does not shield the film from the disclosure requirements of the Freedom of Information Act.

Intervenor next contends that the motion picture film is exempt from disclosure as "commercial * * * information obtained from a person and * * * confidential" within the meaning of 5 U.S.C. § 552(b)(4). Intervenor relies on *General Services Administration v. Benson*, 415 F.2d 878 (9 Cir. 1969), for the proposition that 5 U.S.C. § 552(b)(4) protects information subjectively determined to be confidential by the individual providing it to an agency. It is true that the Court of Appeals in *Benson* approved of the trial court's conclusion that "the exemption is meant to protect information that a private individual wishes to keep confidential for his own purposes, but reveals to the government under the express or implied promise by the government that the information will be kept confidential." 415 F.2d at 881. However, in its very brief discussion of the exemption in that case, the court did not consider the question whether the test for confidentiality should be subjective or objective.

■ Other courts have made it clear that the test for confidentiality is an objective one. *National Parks and Conservation Association v. Morton*, 162 U.S.App.D.C. 223, 498 F.2d 765, 766–

767 (1974); *Bristol-Myers Co. v. F. T. C.,* 138 U.S.App.D.C. 22, 424 F.2d 935, 938 (1970), *cert. denied,* 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970). In *Morton,* the Court of Appeals after a thorough analysis, derived the following test for confidentiality:

> " * * * [C]ommercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." 498 F.2d at 770.

The court's review of the legislative history on which it based the above test has been favorably commented upon as an accurate characterization of the purpose and the goals of the Act.[5]

In applying the *Morton* test to the instant case, the first inquiry is whether releasing the film to plaintiff is likely to impair the government's ability to obtain necessary information in the future. The contract between NMFS and Medina for the use of the M/V Queen Mary during November and December, 1971, was negotiated under Section 302 (c)(10) of the Federal Property and Administrative Services Act of 1949, as amended, which permits the head of an agency to enter into a contract for research purposes, without advertising. 41 U.S.C. § 252(c)(11). Subsequent to the research cruise, the Marine Mammal Protection Act of 1972 became law. 16 U.S.C. § 1361 *et seq.* That act, for a 24-month period beginning October 21, 1972, empowered agents of the Secretary of Commerce to board commercial fishing vessels on regular fishing trips "for the purpose of conducting research or observing operations in regard to the development of improved fishing methods and gear" designed to reduce the incidental taking of marine mammals. 16 U.S.C. § 1381(d). Shortly before the expiration of the 24-month period provided for in the Marine Mammal Protection Act of 1972, the Secretary of Commerce promulgated regulations in regard to the taking and importing of marine mammals. 50 C.F.R. § 216.1 *et seq.* Among the new regulations is a provision similar to 16 U.S.C. § 1381(d):

> " * * * [A]uthorized agents of the Secretary may * * * board * * * commercial fishing vessels * * * on regular fishing trips, for the purpose of conducting research or observation operations * * *. No masters, charterer, operator or owner of such vessel shall impair or in any way interfere with the research or observations being carried out." 50 C.F.R. 216.24(f).

As filming is essential to some kinds of research and is often an effective means of recording observations, such activity falls within the scope of the term "research or observations". Thus, federal regulations now permit

---

5. Note, "Administrative Law—Freedom of Information Act—Commercial or Financial Information 'Confidential' if Disclosure Would Impair Government Access to Information or Harm Competitive Position of Informant," 88 Harv.L.Rev. 470, 474 (1974). The *Morton* test has been recognized in a number of cases. *Rural Housing Alliance v. United States Dept. of Agri.,* 162 U.S.App.D.C. 122, 498 F.2d 73, 78 (1974); *Petkas v. Staats,* 163 U.S.App.D.C. 327, 501 F.2d 887, 889 (1974); *Pacific Architects & Eng. Inc. v. Renegotiation Bd.,* 164 U.S.App.D.C. 276, 505 F.2d 383, 384 (1974); *Hughes Aircraft Company v. Schlesinger,* 384 F.Supp. 292, 295 (C.D.Cal.1974); *McCoy v. Weinberger,* 386 F.Supp. 504, 507 (W.D.Ky.1974); *cf. Ditlow v. Schultz,* 379 F.Supp. 326, 329 (D.D.C.1974). The test is consistent with the rule that exemptions to the Freedom of Information Act are to be construed narrowly. *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820, 823 (1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974); *Ethyl Corporation v. Environmental Protection Agency,* 478 F.2d 47, 49 (4 Cir. 1973); *Cuneo v. Schlesinger,* 157 U.S.App.D.C. 368, 484 F.2d 1086, 1091 (1973).

the government to make films such as that sought by plaintiff, without regard to the consent of ship owners. Even if release of the film in question could have impaired government access to information in 1971, it could no longer do so. This conclusion appears to be supported by the government's non-opposition to plaintiff's motion for summary judgment.

The second inquiry under the *Morton* test is whether release of the film would cause substantial harm to the competitive position of the intervenor. Plaintiff's uncontradicted affidavit as well as *in camera* viewings by this Court reveal that neither Medina's name, nor the name of his vessel, appears in the film. Representatives of the intervenor have helped to purge the film of all possible trade secrets. The intervenor no longer even attempts to show possible injury to his competitive position. Clearly, there has been no showing of substantial harm.

■ The film is not "confidential" within the meaning of 5 U.S.C. § 552(b) (4). It is unnecessary to consider the question as to whether the information contained in the film was "obtained from a person" within the meaning of the exemption.

■■ In view of this Court's holdings on the legal issues discussed above, the factual issues raised by intervenor are not material. It would appear appropriate to release the film accompanied by a disclaimer [6] informing viewers that the scenes therein were taken during the course of experiments and do not necessarily depict occurrences in normal fishing operations. Plaintiff contends that Congress has not granted the federal courts equitable jurisdiction to withhold or limit the release of information not exempt from disclosure. Plaintiff is correct in its contention. *Soucie v. David,* 145 U.S.App.D.C. 144, 448 F.2d 1067, 1076–1077 (1971); *Getmann v. N.L.R.B.,* 146 U.S.App.D.C. 209, 450 F.2d 670, 677–680 (1971). However,

the disclaimer would not withhold or limit the release of information. To the contrary, it would provide the public with additional information in regard to the source of the scenes in the film. The disclaimer would aid viewers in forming more objective opinions as to the contents of the film and would thus be consistent with the purposes of the Freedom of Information Act.

It is hereby ordered that plaintiff's motion for summary judgment is granted.

It is hereby further ordered that the motion picture film constituting the subject of this action be released forthwith to plaintiff, provided that the film will be displayed with a disclaimer pursuant to the order of this Court dated September 22, 1975.

It is hereby further ordered that counsel for plaintiff shall prepare an appropriate form of judgment consistent with this memorandum of opinion, have it approved as to form by other counsel, and submit it to this Court as promptly as possible.