**MARTIN MARIETTA ALUMINUM, INC., a California Corporation, Plaintiff,**

v.

**ADMINISTRATOR, GENERAL SERVICES ADMINISTRATION, an agency of the United States and Department of the Air Force, and agency of the United States, Defendants.**

Civ. No. 77–614–HP.

United States District Court,
C. D. California.

Nov. 30, 1977.

Stephen C. Taylor, Robert D. Donaldson, Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., William Vetter, Torrance, Cal., for plaintiff.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Division, Harold J. Hughes, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

PREGERSON, District Judge.

This matter is before the court on defendants' motion for summary judgment, filed August 29, 1977, and on plaintiff's cross motion for summary judgment, filed September 2, 1977. Having considered the pleadings, the memoranda of law, and the oral argument of counsel, heard on September 26, 1977, the court concludes that defendants' motion for summary judgment should be granted and plaintiff's cross motion should be denied.

In 1973, defendant Department of the Air Force (Air Force) reported to defendant General Services Administration (GSA) that certain items of government-owned equipment, including extrusion and forging presses, leased by plaintiff Martin Marietta Aluminum, Inc. from the Air Force, should be considered excess property. GSA then determined that the equipment was surplus and thus disposable by sale. Plaintiff continued to use the equipment, pursuant to a new lease, pending negotiations with GSA over sales price.

In negotiating a sales price, GSA considered two appraisers' reports that expressed opinions on the value of the equipment. One report was obtained in December 1972, from Coates and Burchard, private appraisers. This report, consisting of 170 pages, was prepared for use by the government in negotiating a new lease of the equipment. The Coates and Burchard report described the appraised equipment, explained the appraiser's methodology, and stated the appraiser's estimates of value. In September 1974, a second report was prepared at GSA's request because a sale of the equipment to plaintiff was then contemplated. This report, consisting of 175 pages, was prepared by John Alico, another private appraiser. The Alico report included a detailed listing of the equipment and estimates of value.

Before making an offer for the equipment, plaintiff asked for copies of the Alico and the Coates and Burchard reports. The request was based on plaintiff's belief that defendants had a duty to disclose the appraisers' reports under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Ultimately, except for minor excisions, GSA turned over to plaintiff all but 26 of the 345 pages included in the two reports. The withheld information involved expert opinions on the value of the equipment and the methods used by the appraisers in arriving at those opinions.

In July 1976, plaintiff's offer to buy the equipment was rejected by GSA because the price offered was far below GSA's estimate of the property's special use value to plaintiff. In rejecting the offer, GSA relied heavily on the two appraisers' reports, including the portions not disclosed to plaintiff.

In this suit, plaintiff has renewed its request for disclosure of the withheld portions of the appraisers' reports. Asserting that disclosure would severely cripple the Government's ability to negotiate a fair price for the equipment, defendants still refuse to release the withheld information, contending that the withheld portions are exempt from disclosure under 5 U.S.C. § 552(b)(4) and (b)(5).

Although the Freedom of Information Act, 5 U.S.C. § 552, recognizes the public's right to obtain a broad range of official information, the Executive Branch is given the option to exempt from public disclosure nine types of information, described in general terms in § 552(b)(1) through (9). *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). In ruling on the pending motions, the court is asked to determine whether the withheld information concerning appraisers' opinions and methods fits the description of information exempt under § 552(b)(4) or (b)(5). For the reasons discussed below, the court has concluded that exemption (b)(5), not (b)(4), applies.

Section 552(b)(4) exempts from disclosure "commercial or financial information obtained from a person and privileged or confidential." There is no dispute that the withheld portions of the appraisers' reports consist of non-privileged commercial or financial information obtained from a person. Accordingly, if exemption (b)(4) is to apply at all, the information in question must be "confidential" within the meaning of the exemption.

■ In *National Parks and Conservation Ass'n v. Morton*, 162 U.S.App.D.C. 223, 498 F.2d 765 (1974), concessionaires in national parks contended that their financial records and reports were confidential and therefore exempt under § 552(b)(4). The District of Columbia Circuit, after reviewing the Senate and House Reports on the exemption, explained that the exemption was designed, in part, to protect persons that supply financial or commercial information to the Government from suffering unfair competitive disadvantages if the information is disclosed. 162 U.S.App.D.C. at 226–28, 498 F.2d at 768–70. Concerning the meaning of the word "confidential" as used in the exemption, the court said:

> [C]ommercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained.

162 U.S.App.D.C. at 228, 498 F.2d at 770 (footnotes omitted). Applying this test, the information in question here does not appear to be confidential. Full disclosure of the appraisers' reports would neither impair the Government's ability to obtain such reports in the future nor cause substantial harm to the appraisers' competitive positions.

In *General Services Administration v. Benson*, 415 F.2d 878 (9th Cir. 1969), the Ninth Circuit also considered the meaning of the word "confidential" as used in § 552(b)(4). In *Benson*, the buyer of property from GSA was attempting—after the sale—to clarify the nature of the transaction for tax purposes. He therefore requested the disclosure of the appraisers' reports on the property. In rejecting the Government's argument that the exemption provided by § 552(b)(4) applied to these reports, the court quoted the following language from the district court's opinion:

> [T]his exemption clearly condones withholding information only when it is obtained from a person outside the agency, and *that person wishes the information to be kept confidential.* . . . [T]he exemption is meant to protect information that a private individual wishes to keep confidential for his own purposes, but reveals to the government under the express or implied promise by the government that the information will be kept confidential.

*Benson v. General Services Administration*, 289 F.Supp. 590, 594 (W.D.Wash.1968), quoted at 415 F.2d 878, 881 (emphasis added). The Ninth Circuit then observed that the district court's "conclusion as to the meaning of 'confidentiality' seems correct." 415 F.2d at 881.

In the present case, there is no reason to believe that the private appraisers who prepared the reports did so with the expectation that the Government would not release their contents. Nor has any reason been shown why the appraisers would want this information kept confidential for competitive reasons. Thus, it appears that, as there was no reasonable expectation of confidentiality on the part of the appraisers here, the exemption from disclosure provided by 5 U.S.C. § 552(b)(4) does not apply.

Defendants also contend that § 552(b)(5) exempts from disclosure the information in question. Section 552(b)(5) provides that disclosure is not required as to

> [I]nter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. . . .

The two requirements that must be met for this exemption to apply to specific information are: (1) the information must be contained in inter-agency or intra-agency documents, and (2) the information must be non-discoverable during litigation between the agency and a private party.

■ As to the first requirement, plaintiff contends that the appraisers' reports are not agency documents because those reports were not prepared by agency employees, but by private independent consultants. This contention is not supported by cases that considered this requirement. In *Wu v. National Endowment for Humanities*, 460 F.2d 1030 (5th Cir. 1972), the court had to decide whether evaluations prepared by private, independent China experts at the request of a federal agency were protected from disclosure under § 552(b)(5). The court held that the experts' evaluations were intra-agency memoranda because they were prepared at the request of a governmental agency. *Id.* at 1032. Similarly, the court in *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971), held that a report on the SST aircraft prepared by a panel of outside experts at the request of a federal agency was nonetheless an agency document. 145 U.S.App.D.C. at 153, 448 F.2d at 1076. See *Washington Research Project, Inc. v. Department of Health, Education, and Welfare*, 164 U.S.App.D.C. 169, 504 F.2d 238 (1974), where it was held that reports prepared by outside consultants for the governmental agency's use in evaluating grant applications were intra-agency memoranda. These three cases support this court's view that the appraisers' reports should properly be considered as intra-agency documents because they were prepared at the request of a federal agency for its use in determining the selling price of government property. Accordingly, the court rules that the appraisers' reports prepared by independent consultants John Alico and Coates and Burchard are intra-agency memoranda within the meaning of 5 U.S.C. § 552(b)(5).

■ To meet the second requirement under § 552(b)(5), the information must be non-discoverable during litigation between the agency and a private party. This requirement refers to material discoverable under the Federal Rules of Civil Procedure by a private party in litigation with the agency. *Environmental Protection Agency v. Mink*, 410 U.S. 73, 85–86, 93 S.Ct. 827, 835-36, 35 L.Ed.2d 119 (1973). Confidential intra-agency advisory opinions which, if disclosed, would harm the Government's decision-making function are normally privileged in civil discovery proceedings. This privilege, commonly labeled "executive privilege," *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975), was discussed by the Supreme Court as follows:

> The cases uniformly rest [executive] privilege on the policy of protecting the "decision making processes of government agencies," and focus on documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."

*Id.* (citations omitted). To satisfy the second requirement of § 552(b)(5), defendants must show that the withheld portions of the appraisers' reports are privileged because they contain opinions or recommendations used by governmental agencies in the decision-making process.

It is undisputed that the withheld information was considered by GSA during the process by which a governmental decision was reached on the selling price of the equipment. Defendants argue that forced disclosure of this information prior to making a sale would place the Government at a competitive disadvantage in disposing of its property. They emphasize that disclosure of the figures contained in a government appraiser's report would, as a practical matter, set the ceiling price that a potential buyer would be willing to pay. Such unilateral disclosure, they argue, would therefore effectively preclude the selling agency from obtaining a fair price for its property, i. e., one presumably determined by bona fide arms-length negotiation. In short, defendants fear that such forced disclosure

would hobble this sale and all future sales of government-owned property to private buyers.

Plaintiff argues that independent appraisers' reports obtained by governmental agencies should not be considered part of the decision-making process. In making this argument, it relies on two cases, *Tennessean Newspapers, Inc. v. Federal Housing Administration*, 464 F.2d 657, 660 (6th Cir. 1972), aff'g 341 F.Supp. 1013, 1015 (M.D.Tenn.1971), and *Philadelphia Newspapers, Inc. v. Department of Housing & Urban Development*, 343 F.Supp. 1176, 1178 (E.D.Pa.1972). These cases, however, considered the release of an appraiser's report *after* a sale was consummated, a time when disclosure would not disrupt the governmental agency's decision-making process nor unduly hamper sales of government property. Thus, they are inapposite.

Courts appropriately exercise equity powers in deciding disputed exemption claims in FOIA cases. Guidelines for exercising those powers were succinctly set out by the Ninth Circuit:

> In exercising the equity jurisdiction conferred by the Freedom of Information Act, the court must weigh the effects of disclosure and nondisclosure, according to traditional equity principles, and determine the best course to follow in the given circumstances. The effect on the public is the primary consideration.

*General Services Administration v. Benson*, 415 F.2d 878, 880 (9th Cir. 1969). The court believes that the Government would be severely handicapped in attempting to sell property if potential buyers were routinely given pre-sale access to appraisers' reports prepared by or for governmental agencies. There is little doubt that the appraiser's opinion on value would most likely set the ceiling price offered by a purchaser, thereby effectively preventing the agency from obtaining through arms-length bargaining a more favorable price—one presumably obtainable by a private seller negotiating competitively with a prospective purchaser. Here, plaintiff will suffer no undue competitive harm if disclosure of the withheld information is denied until the sale has been completed. Plaintiff is, of course, free to obtain its own appraisal of the equipment and to keep that appraisal secret from the Government.

In this case, weighing the harm that would be suffered by plaintiff if disclosure is denied against the harm that would be suffered by the public if disclosure is granted, the court is satisfied that the equities favor the Government's decision not to disclose the information in question. Accordingly, the court holds that the withheld portions of the appraisers' reports fall within the exemption set out in 5 U.S.C. § 552(b)(5) and need not be disclosed to plaintiff before the sale of the equipment is consummated.

THEREFORE, IT IS ORDERED that defendants' motion for summary judgment be granted, and that plaintiff's cross motion for summary judgment be denied.

The Clerk of the Court shall serve copies of this Memorandum Opinion, by United States mail, upon the attorneys of record for the parties appearing in this cause.