**JOWETT, INC., Plaintiff,**

v.

**The DEPARTMENT OF the NAVY, Defendant.**

**Civ. A. No. 89–0091 (CRR).**

United States District Court, District of Columbia.

Oct. 30, 1989.

Francis J. Pelland and Sheira Miller of Sadur and Pelland, Chartered, Washington, D.C., for plaintiff.

A. Patricia Frohman, with whom John D. Bates and Jay B. Stephens, U.S. Atty., were on the brief, Washington, D.C., for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

This is a suit brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by Jowett, Inc., a government contractor seeking disclosure by the Navy of certain audit reports. The Navy has released the reports with substantial redactions, which it claims are justified by Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). This matter is before the Court on the parties' cross-motions for summary judgment. Having conducted an *in camera* review of the requested documents at Jowett's suggestion, the Court will grant summary judgment for the Navy.

## I. FACTUAL BACKGROUND

This dispute began after Jowett sought an "equitable adjustment" in connection with one of its contracts with the Navy for cost overruns of $698,488 allegedly attributable to government-caused delays. As is common when a contractor requests such an adjustment, the Navy had the Defense Contract Audit Agency ("DCAA") conduct audits of Jowett and three of its sub-contractors. These audits and accompanying reports have long since been completed, but the Navy has not yet issued a decision on Jowett's request for an adjustment.

On October 11, 1988, Jowett submitted a FOIA request seeking disclosure of the relevant audit reports. On October 26, 1988, the Navy denied the request and claimed that the reports in their entirety were exempt from disclosure under Exemption 5 of the FOIA. After formally appealing to the Navy's Office of General Counsel and receiving an acknowledgement but no decision, Jowett filed this action on January 12, 1989. The Navy has since provided Jowett with the audit reports pertaining to the plaintiff itself and its sub-contractors. However, relying upon Exemption 5, the Navy substantially redacted these reports, leaving only the various amounts claimed by Jowett and the sub-contractors and excising the auditor's questioned amounts and accompanying explanations. Understandably dissatisfied with getting only what it already knows, Jowett argues that it is entitled to receive the rest of the reports and learn the results of the audits.

## II. ANALYSIS

Exemption 5 specifically exempts from the FOIA's disclosure requirements all "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).[1] The express language of this exemption thus provides that an agency has basically the same privileges and protections during the civil discovery process as any other litigant.

■ More relevant to the instant case, Exemption 5 has also been construed to contain a broader "deliberative process"

---

1. In light of this language, the Court need not decide whether the DCAA, the entity that produced the audit reports, is a separate "agency" for the purposes of Exemption 5 and whether the reports are inter- or intra-agency memoranda.

privilege, designed to protect the "consultative functions" of government by covering "inter- and intra-agency communications that are part of the deliberative process preceding the adoption and promulgation of an agency policy." *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 772 (D.C.Cir.1978); *see Mead Data Central, Inc. v. United States Dep't of Air Force*, 566 F.2d 242, 256 (D.C.Cir.1977). Moreover, the FOIA specifically places the burden on the government to demonstrate that a given exemption applies. 5 U.S.C. § 552(a)(4)(B); *EPA v. Mink*, 410 U.S. 73, 93, 93 S.Ct. 827, 838–39, 35 L.Ed.2d 119 (1973). In light of the above, the Navy may refuse to disclose the unredacted audit reports only if it can show that they are "pre-decisional" *and* that they are part of the deliberative process.

### A. The Audit Reports Are Pre-decisional

Jowett argues that its demand for the audit reports should be treated as a postdecisional request because the Navy has "in effect" made a decision to deny its claim for an equitable adjustment by not issuing its decision within a "reasonable time," as required by the Contracts Dispute Act of 1978 ("1978 Act"), 41 U.S.C. § 605(c)(3). Jowett points out that under the 1978 Act the failure of the contracting officer to issue a decision on the claim within the required period will be deemed to be a decision denying the claim. *Id.* § 605(c)(5).

Although this argument seems, at first glance, to have some merit, closer scrutiny reveals serious flaws. As a threshold matter, Jowett merely asserts, but does not explain, why the 1978 Act's definition of a "decision" should govern the issue of whether materials requested under FOIA are pre- or post-decisional. By relying almost exclusively on the 1978 Act, Jowett ignores the numerous cases that have construed in great detail when something is a "final decision" for the purposes of Exemption 5. *See, e.g., Taxation With Representation Fund v. IRS*, 646 F.2d 666, 677–681 (D.C.Cir.1981); *Bristol–Myers, Co. v. Federal Trade Comm'n*, 598 F.2d 18, 24–26 (D.C.Cir.1978).

■ Putting to one side the 1978 Act definition of final decision, the audit reports do not bear any indicia of finality. Jowett has not demonstrated that the DCAA has any authority to make final decisions on government contractors' equitable adjustment claims. Moreover, the audit reports were prepared at the request of one of the Navy's contracting officers for the express purpose of advising the contracting officer as to the merits of Jowett's equitable adjustment claim. Thus, although technically the reports were not prepared by a subordinate for a superior official within the same agency, this minor distinction cannot change the conclusion that "[t]his flow of advisory material is exactly opposite to the paradigm of 'final opinions,'" which typically flow from a superior with policy-making authority to a subordinate who carries out the policy." *Brinton v. Department of State*, 636 F.2d 600, 605 (D.C.Cir.1980), *cert. denied*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981); *see also Taxation With Representation*, 646 F.2d at 681 ("[A] document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980)).

■ Even assuming that the 1978 Act should govern this issue, Jowett has failed to establish that the Navy's alleged delay in issuing a decision goes beyond the time period contemplated by the 1978 Act.[2] In any event, whether the elapsed time period

---

**2.** The time period from April 1988 (when Jowett submitted its request for a contracting officer's decision) until the present may, to the uninitiated, appear to be more than enough time for the Navy to make this decision. However, the same statute cited by Jowett also provides that what constitutes a "reasonable time" for a contracting officer's decision depends on a variety of circumstances. 41 U.S.C. § 605(c)(3). In addition, the Navy has utilized a provision in the 1978 Act that permits an extension of time if the contracting officer notifies the contractor of the

is reasonable or unreasonable, Jowett has chosen the wrong route to redress the Navy's alleged delay. The 1978 Act provides a contractor in Jowett's position with certain remedies when a contracting officer does not issue a decision within a reasonable time. The contractor may treat its claim as denied and appeal to the agency board of contract appeals, *see* 41 U.S.C. §§ 605(c)(5), 606, or file suit before the United States Court of Claims, *see id.* §§ 605(c)(5), 609(a)(1). Jowett has elected not to pursue either of the options specifically provided by statute for situations like this. It may not use the FOIA to "force" the Navy to issue a decision.

█ Finally, assuming *arguendo* that Jowett's argument did not have the flaws mentioned above, the case law is clear that, even after a final decision has been made, a pre-decisional inter- or intra-agency memorandum that is part of the deliberative process does not lose the protection of Exemption 5 unless it has been expressly incorporated into the final decision. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 161, 95 S.Ct. 1504, 1521, 44 L.Ed.2d 29 (1975) ("if an agency chooses *expressly* to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of some exemption other than Exemption 5" (emphasis in original)); *see also Bristol–Myers Co. v. Federal Trade Comm'n,* 598 F.2d 18, 24 (D.C. Cir.1978); *Shermco Industries, Inc. v. Secretary of the Air Force,* 613 F.2d 1314, 1320 (5th Cir.1980). Thus, even if the Navy's alleged delay could be construed as a final decision, the audit reports have not been expressly incorporated into that decision and therefore do not lose the protection of Exemption 5.

### B. *The Audit Reports Are Part of the Deliberative Process*

As the United States Court of Appeals for this Circuit has held, "[P]re-decisional materials are not exempt merely because they are pre-decisional; they must also be part of the agency give-and-take—of the deliberative process—by which the decision itself is made." *Vaughn v. Rosen,* 523 F.2d 1136, 1144 (D.C.Cir.1975). The policies behind the so-called deliberative process privilege include: (1) encouraging other agencies or subordinates within an agency to be honest and frank in providing the decision-maker with their uninhibited recommendations and opinions; (2) protecting against premature disclosure of proposed policies before they have been finally formulated or adopted; and (3) avoiding confusing the issues and misleading the public by releasing documents which suggest reasons for a proposed decision that were not in fact the ultimate reasons for the agency's actions. *Taxation With Representation Fund v. IRS,* 646 F.2d 666, 677 (D.C. Cir.1981) (quoting *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980)).

█ The Court is satisfied that the audits reports requested by Jowett are covered by the deliberative process privilege as part of the give-and-take between government entities. Disclosure of these reports while the Navy is in the midst of evaluating Jowett's equitable adjustment claim would reveal the Navy's deliberative or decision-making process. It is necessary for the contracting officer who decides Jowett's claim to "review the auditor's *recommendation* on the allowability/substantiation of claimed costs, based upon the auditor's *opinions* as to whether the documentation and underlying bookkeeping procedures of the contractor and subcontractors support the contractor's claimed costs." Defendant's Motion for Summary Judgment, Declaration of John T. Smith ¶ 3 (emphasis added).

Forcing the Navy to provide Jowett with the auditor's opinions and recommenda-

---

time within which a decision will be issued. *Id.* § 605(c)(2)(B). Notwithstanding Jowett's argument to the contrary, the Court does not "condone" the Navy's acts. Instead, the Court expresses no opinion one way or the other as to whether, under the 1978 Act, the Navy has taken an unreasonable amount of time to issue its decision on Jowett's claim.

tions, and the criteria used in arriving at questioned costs, before the contracting officer has made a final decision on Jowett's claim for an equitable adjustment would greatly interfere with the contracting officer's decision-making process. This type of information would not flow freely between the DCAA and the Navy's contracting officers unless such inter- or intra-agency reports are exempt from the FOIA's disclosure requirements:

> If government employees expected that every written recommendation, cost analysis, or feasibility opinion—as well the criteria used in reaching the same—would be the object of intense scrutiny by the party adversely affected thereby, they would be likely only to communicate orally and/or conclusionally. The cost of such an eventuality in terms of efficiency and quality of decisionmaking could be great indeed.

*Mead Data Central, Inc. v. United States Dep't of the Air Force,* 575 F.2d 932, 936 (D.C.Cir.1978) (per curiam); *see Mead Data Central, Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 256 (D.C.Cir.1977) ("[T]he quality of administrative decisionmaking would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible.").

At bottom, Jowett's complaint is that it is not in an equal negotiating position with the Navy contracting officer. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 3. Although Jowett may be at somewhat of a competitive disadvantage in trying to obtain an adjustment of its contract from an entity that has information to which Jowett does not have access, this situation is created not by the FOIA, but by virtue of the particular relationship between a government contractor and the contracting agency as well as the law governing equitable adjustments.

Jowett's interpretation of Exemption 5 would destroy the delicate balance of the government contractor/contracting agency relationship. A government contractor could use the FOIA to restrict the exercise of an agency's discretion and force the agency's hand by achieving premature disclosure of information that often plays an integral role in the deliberative process by which the agency arrives at its final decision. Several cases have reasoned along similar lines that a party engaged in negotiations with a government agency should not be permitted to utilize the FOIA to force the agency to reveal the information it is using to arrive at its position. *See, e.g., Hoover v. United States Dep't of Interior,* 611 F.2d 1132, 1143 (5th Cir.1980) (report appraising value of certain real property is protected by Exemption 5 from disclosure to property owner because report was prepared to assist government agency in making on-going decision of whether to acquire property by condemnation or purchase); *Professional Review Org. v. United States Dep't of Health and Human Servs.,* 607 F.Supp. 423, 426–27 (D.D.C.1985) (statistical information, point scores, and panel members' recommendations pertaining to agency's evaluation of submitted bids are protected by Exemption 5 from disclosure to unsuccessful government contract bidder, who had not yet received decision on previously filed bid protest); *Martin Marietta Aluminum, Inc. v. Administrator, Gen. Servs. Admin.,* 444 F.Supp. 945, 949–50 (C.D.Cal.1977) (reports appraising value of government-owned equipment are protected by Exemption 5 from disclosure to potential buyer because forced disclosure of this information would "set the ceiling price that a potential buyer would be willing to pay [for the equipment]" and would "effectively preclude the selling agency from obtaining a fair price for its property").

On the final issue of severability, the Court disagrees with Jowett's contention that most of the material redacted by the Navy should have been released because it consists of nothing more than the auditor's factual findings and conclusions regarding whether and to what extent Jowett's records support its claimed costs. Jowett makes the mistake of resting its severability argument upon the simply stated—but not always simply applied—distinction between "fact" and "opinion." However,

*EPA v. Mink,* 410 U.S. 73, 90–93, 93 S.Ct. 827, 837–39, 35 L.Ed.2d 119 (1973), and its progeny have established that even factual segments of documents "are protected [by Exemption 5] from disclosure as not being purely factual if the manner of selecting or presenting those facts would reveal the deliberate [sic] process, or if the facts are 'inextricably intertwined' with the policymaking process." *Ryan v. Department of Justice,* 617 F.2d 781, 790 (D.C.Cir.1980) (footnotes omitted); *see also Mead Data Central, Inc. v. United States Department of the Air Force,* 566 F.2d 242, 256 (D.C.Cir.1977) ("Exemption five is intended to protect the deliberative process of government and not just deliberative material.").

After conducting an *in camera* comparison of the redacted and the unredacted versions of the four audit reports at issue, the Court holds that even those redacted segments that could be termed "factual" would, if disclosed, reveal the government's deliberative process. Just because part of a document contains numbers and mathematical calculations does not necessarily mean that it is factual and therefore not protected by Exemption 5. These audit reports are not like a task force narrative report that draws some conclusions and makes recommendations but also contains severable segments summarizing the facts uncovered during an investigation of alleged government misconduct. *See Playboy Enterprises, Inc. v. Department of Justice,* 677 F.2d 931, 935 (D.C.Cir.1982). The unredacted parts of the audit reports at issue here consist primarily of item-by-item lists of the costs claimed by Jowett and its subcontractors, while the redacted portions contain corresponding lists of the costs questioned with accompanying notes providing the auditor's reasons, opinions, and explanations as to why costs were questioned.

This sifting of the facts and determining which facts are significant, giving frank opinions and recommendations based on those facts that certain costs should be questioned, providing justifications for those opinions, and compiling an advisory report for a final decision-maker constitute precisely the kind of "process" that the deliberative process privilege of Exemption 5 is designed to protect. *See, e.g., Taxation With Representation Fund v. IRS,* 646 F.2d 666, 677 (D.C.Cir.1981). Therefore, the Court holds that the manner of selecting and presenting even the most "factual" segments of the audit reports would reveal the process by which the final decision on Jowett's claim is made and that these facts, which are inextricably intertwined with the Navy's deliberative process, are protected from disclosure by Exemption 5.

### III. CONCLUSION

The Navy has met its two-fold burden of showing that the audit reports requested by Jowett—except for those segments already disclosed—are pre-decisional and are part of the government's deliberative process. Consequently, the redacted portions of the reports are protected from disclosure by Exemption 5 of the FOIA, and the Navy's motion for summary judgment shall be granted.

An Order in accordance with the foregoing Opinion will be issued of even date herewith.